Bays v. The State.

---

WILLIAM BAYS, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. Practice in Cases of Misdemeanor: COMPLAINT. If the original complaint in a case of misdemeanor appealed to the district court be lost, the court may order a new complaint to be substituted covering the same offense as shown by the justice's transcript.

2. Competency of Evidence. On the trial of a person charged with the willful disturbance of a public school it is competent for the defendant to prove that he was a member of the district school board, and that what he did was in pursuance of an order of the board and in the honest discharge of his official duty. And it is error to exclude such testimony.

3. **Powers of the School Board:** TEACHER. The district school board is specially invested by statute with the general care and management of the school and the employment of the teachers, and as an incident to these powers, has a right to discharge a teacher for incompetence, or for any other sufficient cause, at the will and pleasure of a majority of its members.

ERROR from the district court of Lancaster county. Tried before POUND, J. The facts appear in the opinion.

*Lamb, Billingsley & Lambertson,* for plaintiff in error.

I. The court erred in permitting the state to file a substituted complaint. *Ganaway v. State,* 22 Ala., 772. *Reinhart v. State,* 29 Ga., 522. *Bradshaw v. Commonwealth,* 16 Grat., 507. Sometimes the court permits a copy to be filed, but it must be proved to be an exact copy. This is a new and original complaint.

II. The court erred in ruling out all the evidence offered by plaintiff in error, showing that he was a member of the school board, and that in dismissing the teacher he was acting only in the line of his official duty. And the court erred in giving the instructions asked by the state, numbered one, two, three, four, five, six, and in refusing the instructions asked by plaintiff in error, which were to the effect that the board had power to dismiss a teacher for sufficient cause, and that if the jury became satisfied that what the prisoner did at the time he did in good faith, thinking the board had the right to discharge a teacher, his action would not be willful as a matter of law within the meaning of the statute under which the prosecution was brought.

*First.* If the board had power to dismiss, either for cause or without cause, and the teacher was dismissed pursuant to the decision of the board, and defendant did nothing except in discharge of his duty, then the defendant should have been acquitted.

*Second.* If the board did not have power to dismiss under the statute, yet if the defendant acted under the belief that he had such power, the evidence would be admissible as tending to eliminate the element of willfulness or criminal intent. *Ramsey v. Riley*, 13 Ohio Rep., 157. *Schottgen v. Wilson*, 48 Mo., 353. *Wilkes v. Dinsman*, 7 How., 89. *Reed v. Conway*, 20 Mo., 22. *Jenkins v. Waldron*, 11 Johns., 121. *Stewart v. Southard*, 17 Ohio, 402.

*Third.* Willfulness is defined as signifying an evil intent without justifiable excuse. It means not merely voluntarily, but with a bad purpose; in other words it means corruptly. 1 Bishop on Criminal Law, Sec. 428. *Chapman v. Com.*, 5 Wharton, 427, 429. *The State v. Gardner*, 2 Mo., 23. *Commonwealth v. Kneeland*, 20 Pick., 206, 220. *Lawrence v. Sherman*, 2 McLean, 488.

*Fourth.* The board had power to dismiss a teacher. They could do so at pleasure. Statutes of 1867, Sec. 6, page 353. *Nebraska City v. Jones*, 1 Neb., 176. *Knowls v. City of Boston*, 12 Gray, 340. *Eastman v. District Township*, 21 Iowa, 591. They certainly have the power to remove for cause. General Statutes, chapter 68, page 961, sections 45, 56, 82, and 68. Sections eighty-two and ninety-one define the power and duties of county superintendents, but give them no power to dismiss a teacher. The power to employ teachers, which is given to the district board, implies the power to remove. It was decided by the New York court of common pleas that, under the local law prevailing in the city of New York, the power to employ teachers carries with it the power to dismiss them. *Gildersleeve v. The Board of Education*, 17 Abb. Pr., 201. *The City of Crawfordsville v. Hays*, 42 Ind., 208. *Eastman v. District Township*, 21 Iowa, 591.

*George H. Roberts, Attorney General,* and *J. H. Broady,* for the State.

LAKE, CH. J.

The plaintiff in error was tried and convicted in the district court, under the thirty-fourth section of the criminal code, for an alleged disturbance of a public school in district No. 21, in Lancaster county. The case was brought into the district court by an appeal from the judgment of a justice of the peace before whom the case was first tried.

I. When the case was called for trial in the district court, it was discovered that the original complaint sent up by the justice in pursuance of the statute was lost and could not be found. Thereupon, on motion of the district attorney, but against the defendant's objection, a new complaint was substituted, upon which the trial and conviction were had. And this presents the first question for our consideration.

It is contended on the part of the plaintiff in error that the district court had no authority to try him upon any other than the original complaint; that the farthest the court could rightfully go was to permit a copy of the original to be substituted. We are of opinion, however, that there is no error in this particular, but on the contrary, that the course pursued by the court was eminently proper.

The record recites that " the original complaint having been lost since the last term of this court, the district attorney has leave to file a substituted complaint, covering the offense charged in the original information, as shown by the justices' transcript." There is no pretense that the new complaint is not confined to the identical offense charged in the one certified by the justice of the peace, and it seems impossible therefore that the defendant could have been prejudiced in the least by the course taken. But we think our statute, although it

does not in direct terms provide for this particular contingency, clearly recognizes the practice here adopted. Section 325 of the criminal code provides that "the district court shall hear and determine any cause under this act, brought by appeal from a magistrate upon the original complaint, unless such complaint shall be found insufficient or defective, in which event the court, at any stage of the proceedings, shall order a new complaint to be filed therein, and the case shall proceed thereon the same in all respects as if the original complaint had not been set aside." It is evident that, under this provision, no matter how utterly deficient the complaint sent up by a magistrate may be, even if totally wanting in the essential requisites to show the offense intended to be charged, the prosecution will not be thwarted, but "the court shall order a new complaint to be filed," upon which the trial must proceed.

This section establishes a positive rule of practice by which the courts are of course bound whenever the original complaint is found to be defective. And it does more than this—it furnishes a safe guide to the courts in matters of practice whenever a contingency shall arise, which, although not within the letter, is clearly within the spirit of the statute. In the practice of the courts contingencies not unfrequently arise which the legislature has not anticipated by any suitable provision. These must be met by some general or special rule of court suited to the exigency, and which shall protect suitors in all their legal rights. It seems to us that there is quite as much necessity and reason for the substitution of a new complaint when the original is *lost* as there is when found to be merely defective in form or in substance.

It was conceded by counsel for the plaintiff in error that, under the circumstances, the substitution of an exact copy of the first complaint would have been good

practice, and justifiable.   But we are unable to see how it could make any possible difference to the accused whether the complaint upon which he was tried were a copy of the original, or a new one charging the same offense and no more.   There would be a distinction perhaps, but no real difference.

II.   Several objections were taken to the rulings of the court upon the admission of evidence; these may all be considered together.   The record shows that a great deal of testimony was offered, both by way of cross-examination of witnesses called on behalf of the state, and by the direct testimony of those called by defendant to show that certain meetings of the district school board, of which the accused was a member, had been held at which certain charges preferred against the prosecuting witness as teacher were considered; that finally on the morning of the day of the alleged disturbance, before the hour for opening the school had arrived, her discharge as teacher and the closing of the school had been decided upon at a meeting of the board held at the school-house, and that whatever the defendant said or did was in pursuance of the resolution and order of the board.

We do not see upon what ground this testimony could have been excluded.   It may have been upon the theory that the district board was not vested with the authority to discharge the teacher.   But even if this were so, it would still be competent evidence, under the issue, for the purpose of showing that the defendant acted under the honest belief that in what he did he was but performing an official duty which the law enjoined upon him.   This testimony was clearly admissible on this ground alone.

But we think the testimony was competent, and should have been admitted upon the broader ground, that, if

true, it would have established for the defendant a com-
plete justification.   By section 45, of the general school
laws (Gen. St., 968), the members of the district board,
or a majority of them, are empowered to hire " *qualified
teachers* " in the name of the district.   And by section
56, the board is given " *the general care of the school,*
and may establish all needful regulations for the·man-
agement not in conflict with the rules prescribed by the
superintendent."

This language is somewhat general, but we think the
authority is clearly implied for the board to discharge a
teacher who, for any reason, is found to be incompetent.
The authority to terminate the employment of a teacher
must rest somewhere,·and in the absence of ar express
provision on this subject it should, we think, be gov-
erned by the general rule of the common law applicable
in analogous cases, and be held to reside with those whose
duty it is to represent the district in making the con-
tract, and who are also directly responsible for the suc-
cessful management of the school.   By the common law,
if a servant neglect the duties of his employment, or is
incompetent to perform them with reasonable skill, he
may be discharged at once, although hired for a definite
time which has not yet elapsed.   And when a servant is
formally discharged, even although it be without ade-
quate cause, he cannot continue the service against the
will of his employer, but must seek redress by an action
for damages.   But notwithstanding the persistent ef-
forts of the prosecution, supported by the rulings of the
court, to keep it from the jury, the fact appears, that
the defendant, in all he did, was acting as a member of
the school board, and in pursuance of a resolution pre-
viously adopted by a majority of its members.   It ap-
pears also that the three members of the board were all
present in the school-room on the arrival of the teacher,
and that they at once informed her of the action of the

board, and that the school was closed; but she refused to submit to their decision, called the scholars to order, and went on with the school for that day. In view of these facts we see nothing in the conduct of the accused, even in its worst aspect, which would amount to a willful disturbance of the school.

III. As to the alleged errors in the matter of instructing the jury, but little need be said. It is evident that the court labored under the same misapprehension of the law of the case, as it did in the admission of evidence. The judge was evidently impressed with the idea that the district board had no power either to dismiss the teacher or to stop the school. Most of the instructions given were calculated to bring this fact prominently before the jury, and to give them to understand that the fact of Bays being a member of the school board, and that he was but carrying out its orders in what he did, could have no bearing whatever in the decision of the case. In this there was manifest error.

There were several instructions requested for the defendant, and refused, which stated the law correctly, but as they bear upon the same point, and are really but different forms of statement of the same proposition, we will notice but two of them. These were as follows:

"1st. If the jury find from the evidence that the defendant William Bays was one of the board of directors in said school district, and that said local directors had met and decided that Miss Paschal, then teaching said school, should be dismissed, and the school closed; and that the complaining witness, Olive Paschal, was teacher of said school, and the acts complained of were done honestly in his official character, as a member of said school board, and in an orderly manner, then you will find the defendant not guilty."

"2d. The jury are instructed, as a matter of law,

that the directors of school districts have a right to discharge and dismiss a teacher of public schools, hired by them, on account of incompetency of teacher, or for any sufficient cause, at their own will and pleasure, and close the school."

It is true that the evidence in justification of the defendants' conduct was not very full or complete. But this was owing, doubtless, to the exclusion of the principal portions of it by the court. There was enough, however, to form a basis for these instructions, and it was error to refuse them. The testimony was ample to have warranted the jury, under proper instructions, in the return of a verdict of not guilty.

For these reasons the judgment is reversed, and a new trial awarded.


MAXWELL, J., dissenting.

I cannot concur in that portion of the opinion of the court which holds that a school board having made a contract with a teacher for three months service, may at the expiration of two months, at their mere whim or caprice, dimiss the teacher and close the school. Section forty-five of the school law (Gen. Statutes, 968) provides that: "The director, with the consent and advice of the moderator and treasurer, or one of them, or under their direction if he shall not concur, shall contract with and hire qualified teachers for and in the name of the district, which contract shall be in writing, and shall have the consent of the moderator and treasurer, or one of them, endorsed thereon, and shall specify the wages per week or month, as agreed by the parties, and a duplicate thereof shall be filed in his office; *provided*, that if the director shall refuse to make and sign such contract when so directed by the moderator and treasurer, then it may be made and signed by the moderator and treasurer."

Section forty-nine provides that : " The director shall, with the concurrence of the moderator and treasurer, or either of them, provide the necessary appendages for the school-house, and keep the same in good condition and repair during the time school shall be taught in said school-house."

Section fifty-six provides that : " The district board shall have the general care of the school, and may· establish all needful regulations for ·the management not in conflict with rules prescribed by the superintendent."

Section eighty-one provides that: " The county superintendent shall grant certificates in such form as shall be prescribed by the state superintendent of public instruction, licensing as teachers all persons whom, on thorough and full examination, he shall deem qualified in respect to good moral character, learning, and ability to instruct and govern a school."

Section eighty-two provides that: " The county superintendent may revoke any teacher's certificate for any reason which would have justified the withholding thereof when the same was given, as for gross negligence of duty, or for incompetency or immorality."

The law authorizes the employment of such persons only as have passed a satisfactory examination and have received a certificate from the county superintendent, licensing them to teach. A person possessing such certificate may enter into a contract with a school board to teach school for a specified length of time, and unless his certificate is revoked for cause, may enforce such contract against the district.

This is admitted. But it is contended that although the district will be liable on such contract, yet the board may at any time discharge the teacher without cause, and employ another, or close the school, and that a servant, although hired for a definite period which has not elapsed, may be discharged for cause or without, and cannot con-

tinue the service against the will of the employer. It is conceded that no express authority is given by statute for the exercise of these powers, but it is claimed that it may reasonably be inferred from the authority of the board to have the general care of the school, and to establish needful rules and regulations for the management thereof. It seems to me that this power merely authorizes the school board to provide needful rules and regulations for the government of the school, and whatever is necessary to secure good order and promote the advancement of the school. Had the legislature intended to give school boards authority to discharge teachers at pleasure, it is but reasonable to suppose that such authority would have been given in express terms. The school boards are mere trustees for the school districts. They possess no powers except such as are expressly given by statute, or are necessarily implied. The district is liable for their acts only when they act within the scope of their authority, and is not liable for their torts, and ought not to be required to pay for the services of teachers discharged by them without sufficient cause. If the person employed by them as a teacher is found not to possess the necessary qualifications to teach, the remedy is by a re-examination of such teacher before the county superintendent. If on such re-examination it is found that such person has not a good moral character, or has not the necessary qualifications in respect to learning or ability to teach, his certificate should be revoked. But it is said that county superintendents neglect their duty, and that certificates are issued to unworthy persons. The answer to this statement is, that the law *presumes* that an officer will properly discharge his duty. A person licensed to teach, who has entered into a written contract to teach school in a certain district for a definite length of time, may reasonably suppose that such contract is as binding on the school dis-

14

trict as on himself, and that during the existence of such contract he cannot be dismissed merely because a majority of the school board are unreasonable or unjust. In such a case where a teacher is dismissed, the mere payment of the amount due on the contract is no compensation for the injury to his reputation. But the injury is not restricted to the teacher. A school district accustomed to discharge its teachers on trivial pretexts is seldom harmonious, makes but little advancement, and not unfrequently is controlled by the ignorant or vicious. The judgment of the district court should be *affirmed*.

REVERSED AND REMANDED.