# CITY OF MINNEAPOLIS v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

November 3, 1911.

Nos. 17,181—(19).

**Recitals in contract — estoppel of parties.**

Recitals in a contract, which are consistent and certain in their terms, relevant to the subject-matter of the contract, and with reference to which the contract was made, estop the parties thereto from denying the facts recited.

**Bridge over defendant's track — findings — evidence.**

Evidence and recitals in the contract of the parties hereto considered, and held, that they are sufficient to sustain the finding of the trial court that there is a public way over the railway tracks of appellant at the locus in quo, and, further, that its conclusion of law, to the effect that the uncom-

1 Reported in 133 N. W. 80.

pensated duty of constructing a bridge over the tracks may be imposed upon the appellant, is sustained by the findings of fact.

Action in the district court for Hennepin county to recover $4,375, one-half the cost of the reconstruction of a certain bridge paid by plaintiff, in accordance with the terms of the contract between the parties which is referred to in the opinion. The answer, among other matters, set out the conveyance of a strip of land fifty feet wide to defendant's lessor in 1881, that at the time of the conveyance the place where the bridge was located was outside of the limits of plaintiff city and there was no street of any kind there. The answer further alleged that plaintiff never acquired any right across, in, or to the right of way of defendant's lessor at the point where the bridge is located, and no street or highway exists at that point, and admitted the execution of the contract referred to in the opinion.

The case was tried before Booth, J., who made findings of fact and as conclusions of law found defendant was estopped from denying the existence of the easement across the right of way, and ordered judgment in favor of plaintiff for the sum demanded. From an order denying defendant's motion for certain amendments of the findings of fact and conclusions of law or for a new trial, defendant appealed. Affirmed.

N. M. Thygeson, for appellant.
C. J. Rockwood, for respondent.

START, C. J.
Action to recover $4,375, being one-half of the cost of the bridge hereinafter referred to, based upon a written contract between the parties hereto, which is referred to as "Exhibit A." The cause was tried by the district court of the county of Hennepin without a jury, and findings of fact and conclusions of law made in plaintiff's favor. The defendant appealed from an order denying its alternative motion to amend the findings and conclusions of law or for a new trial. The appeal, in legal effect, is only one from an order denying a motion for a new trial. Horton v. Crowley Electric Co. 108 Minn. 508, 122 N. W. 312. The appeal, however, raises the questions here urged by the defendant.

The controlling question presented by the record is whether there was, at the time Exhibit A was executed, a public street or way, at the locus in quo, across the defendant's right of way and railway tracks. The trial court found that there was, and such finding is vigorously challenged by the defendant as not sustained by the evidence.

The evidence, documentary and oral, exclusive of Exhibit A, bearing directly or indirectly upon the question, is voluminous; but our conclusion, as to the effect of the recitals in Exhibit A, renders unnecessary any extended reference to such evidence. The evidence is practically conclusive that the defendant's railway tracks at the locus in quo are not located in any street or public way; that they are located in an artificial depression some twenty feet below the natural surface of the land at that point; that the plaintiff, by its park board, in 1888 acquired the necessary land therefor and established, and has ever since maintained, a parkway or park boulevard on each side of the defendant's right of way and tracks at the locus in quo; that in 1889 the park board constructed a wooden bridge over the tracks of the defendant at the level of the natural surface of the land, thereby connecting the separated parts of the parkway or boulevard; that the bridge was, without any objection or protest by the defendant or its predecessors in interest, continuously maintained by the park board and used by the public until 1905, when it became unsafe for parkway purposes; that a large amount of travel, suitable to the parkway, passed over the bridge; and, further, that a bridge over the defendant's tracks is reasonably necessary for the safety and convenience of the public. There was no evidence tending to show that the public ever acquired a parkway or public way over the defendant's railway tracks other than by a common-law dedication. Whether the evidence, exclusive of Exhibit A, was sufficient to sustain the finding of the trial court is a fairly debatable question; but the evidence, including Exhibit A, is practically conclusive, as between the parties hereto, that there is, and was when Exhibit A was executed, a public way across the locus in quo.

The city was designated in the contract, Exhibit A, which was made February 7, 1905, as the party of the first part, and the

appellant as the party of the second part. The here material recitals and provisions are to the effect following:

The party of the second part is maintaining and operating its railway tracks across the line of the parkway or street, known as Park Boulevard, in the city of Minneapolis. Such railway tracks are laid in a depression, which was made by excavation of the soil, over which a wooden bridge was constructed, in the year 1887, for the purpose of carrying the traffic of Park Boulevard. The bridge has fallen into a state of decay and disrepair, and a new bridge is necessary. The party of the first part is of the opinion that it is under no obligation to rebuild such bridge, and that it has the legal right either to grade the parkway by filling the excavation with earth, or to require the party of the second part to construct and maintain a bridge. The party of the second part is of the opinion that it has a right to maintain and use its tracks in their present position, and that it is under no duty or obligation to construct a bridge over the same. It is desirable that a bridge shall be immediately constructed to serve the public needs, and a plan for such bridge has been mutually agreed upon by the parties hereto, and neither party is willing to waive any of its legal rights, nor to assume or incur any greater liability in the premises than is required of it by law. The parties hereto have mutually agreed upon a course of action to secure the immediate construction of the bridge. Therefore the parties hereto do hereby agree that such bridge shall be immediately constructed by the party of the second part in accordance with the plan agreed upon; and the party of the first part does hereby agree to pay one-half of the total cost of the bridge in the following times and manner: The chief engineer of the party of the second part shall, from time to time, certify to the party of the first part the total amounts that have been actually incurred and paid by it in the construction of the bridge, which amounts the party of the first part shall pay. It is expressly agreed that neither party does, by this agreement, waive any of its legal rights, nor assume, as against the other, any duty or obligation; and either party may, upon the completion of the bridge and the payment of its share of the expenses, bring an

action, if so advised, against the other to recover the amount by it paid.

This contract was modified by a supplemental one, made on March 7, 1905, providing only for an increase in the width and cost of the bridge. This contract contained this recital: "Whereas, said parties entered into an agreement in writing dated February 7, 1905, for the construction of a certain bridge across the railway tracks of said party of the second part at or near the junction of Queen Avenue South and Park Boulevard (so called) in the city of Minneapolis and state of Minnesota. * * * "

The city claims that the appellant is estopped by the recitals to deny that there was a parkway or street across its railway tracks. Such was the view of the learned trial judge; but the appellant challenges the correctness of this conclusion. The law applicable to this question is well settled, and to this effect:

Recitals in a contract, which are consistent and certain in their terms, relevant to the subject-matter of the contract, and with reference to which the contract was made, estop the parties thereto to deny the facts recited. Red Wing Sewer Pipe Co. v. Donnelly, 102 Minn. 192, 113 N. W. 1, 120 Am. St. 619; 24 Am. & Eng. Enc. (2d ed.) 58; 16 Cyc. 721. The recitals in the contract, Exhibit A, are clearly within the rule stated. They are certain in their terms, consistent with each other, and relevant to the subject-matter of the contract, which was made with reference to them. The only claim made by the appellant to the contrary is that the provision "that neither party waives any of its legal rights, nor assumes as against the other any duty or obligation," qualifies the recital that there was a public way at the locus in quo, and leaves the appellant free to deny the truth of the recital. It is clear, from the recitals and provisions of the contract, that the clause thereof relied upon refers, not to the question of the existence of the public way, but to the construction of the new bridge over it and the legal duty and obligation of the respective parties to build it. The question as to the duty and obligation in such cases was then pending in the courts of this state and not definitely decided. See State v. St. Paul, M. & M. Ry. Co., 98 Minn. 380, 108 N. W. 261, 28 L.R.A.(N.S.) 298, 120 Am. St.

581. The parties accordingly, by their contract, after reciting the claim of each as to the question of liability, expressly reserved the question of liability for future determination in any action either party might bring. This is the only construction of the contract consistent with its language and a sane intent of the parties thereto, for the existence of the street easement was the sole basis of any claim upon the appellant to build the bridge and the motive for the making of the contract. The recital in the supplemental contract does not in any manner affect this construction, for the parenthetic clause, "so called," refers, not to the existence of the public way, but to the name by which it was called.

We hold that the finding of the trial court, to the effect that there was a public way across the locus in quo at the time the contract was made, is sustained by the evidence. This conclusion obviates the necessity of considering in detail the other contentions urged by the appellant, for it is now the settled law in this state that the uncompensated duty of constructing safety devices over railway tracks may be imposed upon the owners thereof by the state in the exercise of the police power. State v. St. Paul, M. & M. Ry. Co. supra; Chicago, Milwaukee & St. Paul Ry. Co. v. City of Minneapolis, supra, page 460, 133 N. W. 169. Whether the appellant is owner or lessee of the railway tracks in question is not, in view of the recitals and provisions of the contract, here material. We are not to be understood as intimating that, if in fact the appellant was a lessee, but in possession and operating the tracks, it would be relieved from the duty of providing necessary safety devices over its tracks.

Order affirmed.