WAUNETA V. GREER, APPELLANT, V. EDWARD CHELEWSKI ET AL., APPELLEES.

76 N. W. 2d 438

Filed April 20, 1956. No. 33879.

*John R. Sullivan,* for appellant.

*Ralph W. Norman,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Wauneta V. Greer brought this action in the district court for Valley County under the Uniform Declaratory Judgments Act. It involves the rights, duties, and liabilities of the parties to a contract of employment to teach entered into by plaintiff, a qualified teacher, with the School Board of School District No. 37 of Valley County, Nebraska. The trial court dismissed the action. Plaintiff thereupon filed a motion for new trial and, from the overruling thereof, took this appeal.

Appellant was, on August 10, 1953, employed to teach school for school district No. 37 for a term of 9 school months beginning August 31, 1953. She taught until February 15, 1954, when she was discharged. The notice given her by the district stated the action was being taken "* * * because of your incompetency, insubordination, failure to meet with the Board and discuss your problems, failure to hold school at proper times without good cause, failure to be present and open school at the proper time, and for general improper conduct both during school and outside of school hours." Thereafter she continued to report at the school for the purpose of teaching until the sheriff ordered her to stay away.

The School Board of School District No. 37 of Valley County, Nebraska, hereinafter referred to as the school district, consisted of Edward Chelewski, president; Ralph H. Lybarger, secretary; and Wester L. Jones, treasurer.

Appellant filed a motion for summary judgment. This was made under and pursuant to the authority provided

therefor by sections 25-1330 and 25-1332, R. S. Supp., 1953. The court overruled the motion and thereafter decided the case on its merits. In presenting the motion appellant's counsel stated: "* * * there is no genuine issue here because the Reply to Request for Admissions was not filed and served within the specified time in the Request and because it does not comply with the statutory requirements that it be sworn to by the defendants and the matters therein are deemed admitted thereby establishing for the plaintiff a prima facie case; * * *."

This action was commenced on February 27, 1954, by appellant filing her petition. Thereafter, on December 13, 1954, appellant filed with the clerk and served on appellees a request for admissions which contained the following: "* * * requests that the defendants answer separately and fully in writing, under oath, the following interrogatories within ten (10) days after the date of the service of these interrogatories." This was done under and pursuant to the provisions of section 25-1267.41, R. S. Supp., 1953. On December 31, 1954, Edward Chelewski, Ralph H. Lybarger, and Wester L. Jones, by their attorney, filed a reply thereto, which was served on appellant on January 3, 1955. This reply was not under oath. However, the trial court permitted an oath to be filed thereto verifying the reply. This was done on May 17, 1955.

Section 25-1267.41, R. S. Supp., 1953, provides, insofar as here material, as follows: "Each of the matters of which an admission is requested shall be deemed admitted unless, within a period designated in the request, not less than ten days after service thereof or within such shorter or longer time as the court may allow on motion and notice, the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which an admission is requested or setting forth in de-

tail the reasons why he cannot truthfully admit or deny those matters, * * *."

In this respect appellant contends the trial court prejudicially erred by permitting the reply and oath to be filed out of time when no good cause was shown for doing so. It would appear that none of the alleged defects in the proceedings in any way affected the rights of appellant. We think the court, under the statutes hereinafter cited and in the furtherance of justice, was justified, in its judicial discretion, to do what it did. See, §§ 25-852, 25-853, R. R. S. 1943.

Appellant further complains of the fact that the reply was never signed on behalf of the school district. The reply to the request for admission was made in behalf of all appellees, which included the school district, and signed by their attorney, although it listed the members of the school board by their individual names.

We said in Arehart v. School Dist. No. 8, 137 Neb. 369, 289 N. W. 2d 540: "The school board is a public body empowered by law to transact the business of the school district for school purposes. The members act in a representative capacity, not as individuals."

And in Bishop v. Fuller, 78 Neb. 259, 110 N. W. 715, we said: "The general duties of such officers require them to look after the interests of the district, and they should defend suits if it appears that the interests of the district demand it." See, also, §§ 79-102, 79-401, 79-441, and 79-455, R. R. S. 1943, as they apply to the powers of the school board and the members thereof. Here the members of the school board were appearing for and in behalf of the school district and not for themselves as individuals. This contention has no merit.

The contract provided that: "* * * said teacher agrees to teach in the school of the said district in a faithful and efficient manner * * *."

In this respect appellees pleaded: "* * * that the plaintiff did not teach school in a proper and efficient manner; that she did not hold school at regular hours;

that on numberous (numerous) occasions she did not open school in the morning and would fail to notify patrons of the school in advance that she would not hold school on that day; that on at least one occasion she stayed in the schoolhouse late at night in the company of a male friend; that she did not properly conduct herself either in or out of school; that she did not properly care for the school property and on numberous (numerous) occasions would leave the thermostat so high that there was danger of the schoolhouse catching fire."

There was sufficient relevant evidence adduced to justify the discharge of appellant for good cause based on the foregoing provisions of the contract, provided the school district had not estopped itself from doing so by the following provision contained in the contract. Therein it is provided: "IT IS UNDERSTOOD, That this contract may be terminated *only* by mutual agreement, or by operation of law, * * *." (Italics ours.)

Appellant contends: "By their * * * agreement the defendants have estopped themselves from terminating this contract by any means other than those called for in the contract and likewise have estopped themselves to plead any other method of termination of the contract but those contained therein."

"In a broad sense 'estoppel is a bar which precludes a person from denying the truth of a fact which has in contemplation of law become settled by the acts and proceedings of judicial or legislative officers, or by the act of the party himself, either by conventional writing or by representations, express or implied, in pais.' 31 C. J. S., sec. 1, p. 191." May v. City of Kearney, 145 Neb. 475, 17 N. W. 2d 448.

"Recitals in a contract, which are consistent and certain in their terms, relevant to the subject-matter of the contract, and with reference to which the contract was made, estop the parties thereto to deny the facts recited." City of Minneapolis v. Minneapolis St. Ry. Co., 115 Minn. 514, 133 N. W. 80.

In this respect we have held: " 'A party entitled to an estoppel need not in all cases formally plead the estoppel. If the facts constituting the estoppel are in any way sufficiently pleaded, he is entitled to the benefit of the law arising therefrom.' City Nat. Bank of Hastings v. Thomas, 46 Neb. 861, 65 N. W. 895." U. S. Tire Dealers Mutual Corp. v. Laune, 139 Neb. 26, 296 N. W. 333. See, also, McDowell v. Metropolitan Life Ins. Co., 129 Neb. 764, 263 N. W. 145; 21 C. J., Estoppel, § 254, p. 1245.

As to teachers' contracts, we have said: "The contract to teach in the common or free schools of the grade of the one in the district in which this controversy arose is one of employment, and the relative positions occupied by the district represented by the board and the teacher are those of employer and employe. A teacher in the schools of the ordinary district is not a public officer, nor is his position an office." State ex rel. Lewellen v. Smith, 49 Neb. 755, 69 N. W. 114.

"Except in so far as controlled by statute, the validity of a contract of employment of a teacher in the public schools is governed by the rules relating to contracts generally." Spence v. School District, 121 Neb. 64, 236 N. W. 145.

Generally this court has said: "This language is somewhat general, but we think the authority is clearly implied for the board to discharge a teacher who, for any reason, is found to be incompetent. The authority to terminate the employment of a teacher must rest somewhere, and *in the absence of an express provision on this subject* it should, we think, be governed by the general rule of the common law applicable in analogous cases, and be held to reside with those whose duty it is to represent the district in making the contract, and who are also directly responsible for the successful management of the school. By the common law, if a servant neglect the duties of his employment, or is incompetent to perform them with reasonable skill, he

may be discharged at once, although hired for a definite time which has not yet elapsed." Bays v. State, 6 Neb. 167. (Italics ours.) See, also, Wallace v. School District, 50 Neb. 171, 69 N. W. 772.

Section 79-1248, R. R. S. 1943, provides, insofar as here material, that: "A contract for the employment of a teacher, * * * for a public school in the State of Nebraska shall be in writing. The contract form or forms to be used shall be recommended by the Superintendent of Public Instruction."

The contract here used was one "authorized by State Supt. of Public Instruction."

"The rule that a clear expression of one thing is the exclusion of another applies to the construction of contracts as well as statutes." Thos. Beck & Sons v. Economy Coal Co., 149 Iowa 24, 127 N. W. 1109. See, also, Coad v. London Assur. Corp., 119 Neb. 188, 227 N. W. 925.

"According to Webster 'only' means exclusively, solely, merely, for no other purpose, at no other time, in no other wise." In re Salhus, 63 N. D. 238, 247 N. W. 401.

"A contract of employment may contain such terms and conditions as the parties see fit to make provided they are not illegal or unreasonable." 56 C. J. S., Master and Servant, § 6, p. 68.

If the effect of the provision hereinbefore quoted removed entirely from school authorities the right to dismiss a teacher for good cause, we think it would be unreasonable as against public policy and therefore without force or effect. But such is not the case. The laws of Nebraska provide methods whereby a Nebraska teacher's certificate may be either suspended or revoked for good cause. See, §§ 79-1234, 79-1252, R. R. S. 1943. It placed such authority in the then state Superintendent of Public Instruction.

Section 79-1233, R. R. S. 1943, provides: "No person shall be employed to teach in any public, private, denominational, or parochial school in this state who

does not hold a valid Nebraska certificate legalizing him to teach the grade or subjects to which elected."

We said in Zevin v. School District, 144 Neb. 100, 12 N. W. 2d 634: " ' * * * the possession of the certificate is a necessary prerequisite to appointment or employment and that any contract made with a teacher not having such certificate is void so as not even to be susceptible of ratification, * * *.' (24 R. C. L. 616, sec. 73.)"

Since a certificate was an absolute prerequisite to appellant's continued employment, had the then state Superintendent of Public Instruction either suspended or revoked her certificate by proceeding under the statutory authority hereinbefore referred to appellant's contract would have thereupon terminated by operation of law. In view of the authority so granted by the Legislature, which has full authority to deal with the subject, we find nothing illegal or unreasonable in the school district having contractually delegated its right to discharge appellant for good cause to the state Superintendent of Public Instruction.

We think appellant sufficiently offered to perform her part of the contract but was prevented from doing so by the school district without any right on its part to do so. In view thereof we find appellant has a right to recover for the unpaid balance of her wages. See Wallace v. School District, *supra*. We therefore reverse the judgment of the trial court and remand the cause with directions to enter a judgment in accordance herewith.

REVERSED AND REMANDED WITH DIRECTIONS.

YEAGER, J., dissenting.

I respectfully dissent from the majority opinion in this case. On the basis of the facts as disclosed in the majority opinion and the application of what I deem to be controlling legal principles I am convinced that the defendants had the right to discharge the plaintiff and be relieved from any further liability on the contract of employment.

The majority opinion discloses, as I view the situation, that the plaintiff was guilty of a substantial breach of the contract. This, again as I view the situation, gave the defendants the right to rescind the contract. See 12 Am. Jur., Contracts, § 440, p. 1020, et seq.

In legal contemplation the right of defendants to rescind for substantial breach by the plaintiff is not barred by the provision of the employment agreement that "this contract may be terminated only by mutual agreement, or by the operation of law."

SIMMONS, C. J., dissenting.

The majority recite that the plaintiff agreed to teach "in a faithful and efficient manner." Plaintiff also contracted "to accept all properly assigned school duties and to abide by all reasonable and lawful regulations of the School Board * * *." The court holds that there was sufficient evidence to justify the discharge of the plaintiff for good cause based on her contract to teach in a faithful and efficient manner. In other words, the court holds that there was evidence to sustain the trial court's finding that plaintiff had breached her contract. Based on that breach, plaintiff was discharged.

Nevertheless the court holds that plaintiff offered to perform and is entitled to recover the unpaid balance of her wages. The offer to perform came after the breach had occurred and after defendants had discharged the plaintiff because of the breach. Certainly an offer to perform under those circumstances at that time cannot be held to reinstate the breached contract, or to affect the rights of the defendant, the innocent party. To so hold puts a premium on a breach of a contract, and allows the plaintiff to take advantage of her own wrong, collect pay for services not performed in accord with the contract, and to profit by a mere offer to perform subsequent to the breach.

The court holds that the district is estopped to discharge the teacher. The court reaches that result based on the fact that the district used a form of contract

recommended by the state Superintendent of Public Instruction containing a provision for the termination of the contract, and the conclusion that the district had delegated its right to discharge for good cause to the state Superintendent of Public Instruction.

The contract provision does not sustain the court's construction.

The court does not quote the full contract provision that is held to control here and to save the plaintiff harmless from the result of the breach.

In full it is: "IT IS UNDERSTOOD, That this contract may be terminated only by mutual agreement, or by the operation of law, *and that there shall be no penalty for such release from this contract.*" (The part not quoted by the court is italicized.)

Where the full covenant is considered it becomes quite apparent that the provision relates solely to the manner in which *both* parties may be released from the obligation of performance of the contract without penalty.

The provision is now used not to "release" both parties from the obligation of performance, but to deny one party the right to rely on a breach of contract by the other.

Such an intent is utterly foreign to the purposes of the provision, is contrary to its terms, and is without support in this record as the intent of the parties. It is negatived by that part of the provision omitted by the court and here quoted.

The sole act of the district upon which the delegation holding rests was the use of the recommended contract under the statutory provision that: "The contract form or forms to be used shall be recommended by the Superintendent of Public Instruction." § 79-1248, R. R. S. 1943. The legislative mandate required the provision "that there shall be no penalty for release" from such contract. § 79-1250, R. R. S. 1943.

Obviously the Legislature intended a standard form

of teacher contracts and intended that they should be used. The result, then, of the court's holding is not that the district "contractually delegated its right to discharge appellant for good cause" to the state Superintendent of Public Instruction, but that the Legislature intended to and by the cited acts did take that right from the district. It did not lodge the right to discharge in anyone. The opinion holds that the state Superintendent of Public Instruction may revoke or suspend the teacher's license. He cannot discharge the teacher. The district cannot discharge for breach of the contract. No one can discharge a teacher holding one of these contracts no matter how serious the breach.

The court so holds, for it finds that revocation or suspension would terminate the contract by operation of law. There is in that act of the state Superintendent of Public Instruction no exercise of a delegated power to discharge for good cause.

Section 79-1234, R. R. S. 1943, provides that a teacher's certificate "may be revoked" by the state Superintendent of Public Instruction "for just cause"; that the revocation of the certificate shall terminate the employment; and that the teacher must be paid up to the time of receiving notice of revocation. Under that provision the contract terminates not by discharge but by operation of law. The court now makes that the exclusive and only method of termination except by mutual agreement.

Section 79-1233, R. R. S. 1943, makes a certificate a prerequisite to a valid contract of employment as a teacher. It does not follow that the possession of a certificate prevents discharge for breach of the employment contract—and yet that is the effect of the court's decision. The power of the state Superintendent of Public Instruction is only to determine whether or not the certificate shall be revoked. If he fails or refuses to revoke, the district is helpless.

We may properly assume that school districts generally have used this standard form of contract. By this

decision, then, the holding is that the Legislature intended to make the state Superintendent of Public Instruction (and he now is) the arbiter of the standard of performance of each individual teacher holding such a contract; that the state Superintendent of Public Instruction has been made an administrative officer with power to determine all questions of contract obligation of a teacher; and that the district officials no longer have an independent effective power of discipline, to wit the power to discharge for substantial breach of a teaching contract.

I find no support in the act for such a conclusion with its radical departure in the administration of school affairs in this state.

I would affirm the judgment of the trial court.