**Dorothy SCHULTZ, Plaintiff,**

v.

**The SCHOOL DISTRICT OF DORCHESTER IN the COUNTY OF SALINE, IN the STATE OF NEBRASKA, a political subdivision of the State of Nebraska, et al., Defendants.**

**No. CV73–L–154.**

United States District Court, D. Nebraska.

Sept. 7, 1973.

---

**468**

Theodore L. Kessner, Lincoln, Neb., for plaintiff.

Jack L. Craven, Crete, Neb., for defendants.

## MEMORANDUM

URBOM, Chief Judge.

Dorothy Schultz seeks injunctive relief from termination of her teaching contract with the School District of Dorchester, a Class III public school district.

Jurisdiction is founded upon 28 U.S.C. § 1343 and the claim is pleaded under the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985.

The plaintiff was employed for the school year 1972–1973 as a media specialist or librarian and counselor at a Class III school district in Dorchester, Nebraska. On March 20, 1973, the board of education of the school district caused the plaintiff to be sent a letter, notifying her that the board had voted not to renew her contract for the 1973–1974 school year. Reasons were stated. The plaintiff requested a hearing pursuant to § 79-1254, R.R.S.Neb.1943, as amended. A hearing was held on April 11, 1973, with the plaintiff present, after which the plaintiff was informed that

her contract had been terminated effective at the end of the 1972–1973 school year and was given a list of the reasons on which the board based its decision of nonrenewal.

Three points make up the plaintiff's claim: (1) that the Fourteenth Amendment entitled her to a hearing comporting with due process of law, (2) that the hearing lacked due process in that evidence at the hearing related in part to reasons for termination different from the reasons stated in the notice to her preceding the hearing, and (3) that the hearing lacked due process in that she was denied at the hearing the opportunity to record mechanically the proceedings, when she had a recording device with her and no other means of making a verbatim transcript was afforded.

■ A teacher has no constitutional right to a hearing before termination of a contract of employment at the end of the contract period, unless there is at stake the loss of "liberty" or "property." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972).

"Property interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure benefits and that support claims of entitlement to those benefits." Board of Regents of State Colleges v. Roth, supra, at 577, 92 S.Ct. at 2709.

■ A property interest must be more than a "mere subjective 'expectancy.'" Perry v. Sindermann, 408 U.S. 593, 603, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

## I.

The plaintiff's written contract by its terms bound the defendant school district to employ her "for a school year, which shall begin on or about August 28, 1972, and end on or about May 18, 1973, and shall consist of 180 days of service including at least 175 teaching days . . ." Paragraph Third stated:

"That where just cause exists the Board may discharge said Teacher thereby terminating this contract: provided said Teacher has been given the cause or causes for discharge and has been given an opportunity for a hearing before the Board prior to official action being taken. Just cause as used herein may include any one or more of the following: incompetence, immorality, intemperance, cruelty, crime against the laws of the state, neglect of duty, general neglect of the business of the school, unprofessional conduct, physical or mental incapacity, breach of contract for teaching services, or for work stoppage . . ."

Paragraph Fourth provides for compensation upon termination in an amount "which bears the same ratio to the yearly salary . . . as the number of days of service to the date of such termination bears to 180 days of service," and provides for refund by the teacher of any paid but unearned amount.

I think it is clear that paragraphs Third and Fourth of the contract relate only to discharge or termination during, and not at the end of, the stated contract term. They therefore do not govern this case, because the termination of the plaintiff was at the end of the stated contract period.

Paragraph Eighth of the contract does have to do with termination at the end of the contract period and renewal. It repeats the words of § 79–1254, R.R.S. Neb.1943, as amended, which applies to Class III school districts, by declaring that the original contract:

". . . shall be deemed renewed and shall remain in full force and effect until a majority of the members of the Board vote on or before May 15 to terminate the contract at the close of the contract period . . . Provided, that the secretary of the board shall, not later than April 15, notify each . . . teacher in writ-

ing of any conditions of unsatisfactory performance or other conditions because of a reduction in staff members or change of leave of absence policies of the board of education which the board considers may be cause to either terminate or amend the contract for the ensuing school year."

Additionally, the statute, § 79–1254, but not the contract, provides, immediately following the above-quoted words:

"Any teacher . . . so notified shall have the right to file within five days of receipt of such notice a written request with the board of education for a hearing before the board. Upon receipt of such request the board shall order the hearing to be held . . . At the hearing evidence shall be presented in support of the reasons given for considering termination or amendment of the contract, and the teacher . . . shall be permitted to produce evidence relating thereto. . . ."

The foregoing is to be contrasted to the statutory requirements for contracts with Class IV and V school districts, which are larger in population than Class III districts. Sections 79–1255 to 79–1262 designate, for Class IV and V districts, as "probationary teachers" those who have served less than three successive school years. The teacher becomes a "permanent teacher" upon beginning the fourth year in the absence of specific action by the school board. Probationary teachers' contracts "may or may not be renewed as the employing school board shall see fit." After "elected" as a probationary teacher, the teacher "shall be deemed to be reelected under the same contract until a majority of the members of the school board vote, on or before April 1 of any year, to terminate the contract at the close of the contract period . . ." The contract issued to a permanent teacher is known as an "indefinite" contract and shall "remain in force until the teacher reaches the age of sixty-five years, unless it is succeeded by a new contract

signed by both parties or is canceled . . ." Cancellation of an indefinite contract may be made for:

"(1) incompetency; (2) physical disability or sickness . . . (3) insubordination . . . (4) neglect of duty; (5) immorality; (6) failure to give evidence of professional growth; or (7) justifiable decrease in the number of teaching positions or other good and just cause, but may not be made for political or personal reasons."

and advance notice of when and where consideration of cancellation is to occur must be given the teacher and, if the teacher desires, he or she must receive a written statement of the reasons for the consideration. If a hearing is requested, one must be granted, and at the hearing the teacher shall have the right to respond to the reasons for the proposed cancellation.

Thus, the status of a teacher in a Class III district does not appear to be precisely like either the probationary teacher or the permanent teacher in a Class IV or V district. The contracts of both the Class III teacher and the probationary Class IV or V teacher are for a specified period of time and are deemed renewed until the board votes on or before a certain date to terminate them. A possible distinction between the contract of a Class III teacher and a probationary Class IV or V teacher, on the one hand, and a permanent Class IV or V teacher, on the other hand, is that the termination of the former may be for any reason, whereas cancellation of the latter must be for specifically enumerated reasons "or other good and just cause."

It is true that a Class III teacher is entitled to be notified of "any conditions of unsatisfactory performance or other conditions because of a reduction in staff members or change of leave of absence policies . . . which the board considers may be cause to . . . terminate the contract," but nothing explicit in the contract or statutes relating to Class III teachers limits the reasons

for terminations to "unsatisfactory performance" or "reduction of staff" or "change of leave of absence policies" or any other reason. If the state legislature had wanted to establish a relationship between a teacher and a Class III school district which would assure the teacher's continuing employment in the absence of "good and just cause," it had before it a clear model in the statutory sections for Class IV and V permanent teachers.

A review of the legislative history of LB 266 before the 1971 Legislature leaves the proper interpretation of the present statute in doubt. LB 266 was purported by its author and by its introducer not to be a "tenure" bill but to be a "due process" bill. The bill and amendments proposed by the Committee on Education contained specific declarations that a contract could be terminated only for "reasonable and just cause," but those specific declarations were omitted from the finally adopted version of LB 266.

Whether the statute now in effect impliedly, even though not explicitly, assures a teacher that his or her contract will not be terminated at the end of the stated contract period without just cause remains uncertain. It is possible that the necessity, if there be one, of just cause is determinative of whether there is a property right in a Class III teacher under state law. An argument can be built as follows: Property rights are matters of substance, as distinguished from matters of procedure. Matters of firm expectations, and the firmness of the expectations, depend upon who has predictable control over the life of the interest claimed. If a party to a contract will be assured of continued life of the contract by the avoidance by him of "good cause" for its termination, the likelihood of the contract's continuation is largely within his control and thus is predictable by him, and he reasonably can expect to continue to receive the benefits of the contract, if he wishes.

On the other hand, if the contract's continued existence is within the discretion of someone else, who may extinguish it for whatever reason he chooses and who has given no assurance of a decision for continuation, there can be no firm expectation of continuation. There remains only a hope that the decision maker can be persuaded by events—including a hearing—to decide to renew the contract. Such hope is not a property right.

Furthermore, it could be argued, under § 79–1254 the decision maker is the school board; it must grant a hearing but is not bound to decide one way or the other or on any given basis. The hearing is an opportunity for the teacher to persuade; it gives the teacher no ability to control the decision. The right to hearing, therefore, it could be said, gives no basis for a mutual, firm and objective expectation that employment will continue.

The foregoing is merely illustrative of a possible interpretation of the state statute's meaning. A contrary interpretation could be that, unless the legislature intended the Class III teacher to have a property right—a firm, mutual and objective expectation of reemployment—the legislature would not have required the giving of notice of "unsatisfactory performance or other conditions because of a reduction in staff members or change of leave of absence policies of the board of education which the board considers may be cause to either terminate or amend the contract for the ensuing year" and would not have provided for a hearing at which evidence relating to the reasons for considering termination where notice had been given. It could be argued that the hearing in the absence of an implied requirement that the board act only on the basis of such reasons—unsatisfactory performance or other specified conditions—would be virtually useless.

Which of these possible opposing views, or some different one, is proper is a matter of state law. Unfortunately, no cases decided by the Supreme Court of Nebraska have been found which give guidance to me. Schlueter v. School

District No. 42, 168 Neb. 443, 96 N.W.2d 203 (1959); Grier v. Chelewski, 162 Neb. 450, 76 N.W.2d 438 (1956); Arehart v. School District No. 8, 137 Neb. 369, 289 N.W. 540 (1940); Kring v. School District, 105 Neb. 864, 182 N.W. 481 (1921), and Wallace v. School District No. 27, 50 Neb. 171, 69 N.W. 772 (1897), all involve discharge *during* the contract period, not at the conclusion of it.

■ The question, then, is whether I should decide what I think the Supreme Court of Nebraska would hold if the issue were presented to it or whether I should abstain, even though neither party has raised the issue of abstention. From such cases as Railroad Commission of Texas v. Pullman Company, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); McNeese v. Board of Education, 373 U.S. 668 (1963); Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); Lake Carriers' Assn. v. MacMullan, 406 U.S. 498, 92 S. Ct. 1749, 32 L.Ed.2d 257 (1972), and Zwickler v. Koota, 389 U.S. 241, 88 S. Ct. 391, 19 L.Ed.2d 444 (1967), it is apparent that some discretion exists in the matter.

■ There can be no doubt that a resolution of the issue of state law as to the proper interpretation of § 79–1254 would affect many people. I have no figures on the number of Class I, II, III and VI school districts there are in the state or how many teachers and administrators they employ, but there are many, covering the entire state except in Omaha and Lincoln, and all contracts between Class I, II, III and VI school boards and teachers and administrators would be affected by the resolution, because the same statute covers all of them. That is a significant factor in a decision to abstain. Warren v. Government National Mortgage Association, 443 F.2d 624 (C.A. 8th Cir. 1971).

Chief Justice Burger in his concurring opinion in Perry v. Sindermann, 408 U.S. 593, 604, 92 S.Ct. 2694, 2717, 33 L.Ed.2d 570 (1972) foresaw the problem and suggested the solution. He said:

". . . If relevant state contract law is unclear, a federal court should, in my view, abstain from deciding whether [the teacher] is constitutionally entitled to a prior hearing, and the teacher should be left to resort to state courts on the questions arising under state law."

■ Under the circumstances of this case I think the abstention route is the sensible one. Interpretation of the statute by the Supreme Court of Nebraska is highly to be desired. If I should interpret the statute favorably to teachers, the probability of the Supreme Court of Nebraska's being provided the opportunity of interpreting it is dimmed; if I interpret it favorably to the school board and if that interpretation were wrong, the result would be unfair to the plaintiff here.

II.

An alternative to the existence of a property right in the teacher, as discussed in Section I of this memorandum, is the existence of a right to liberty protected by the Constitution. If there has been denial of a right to liberty, no abstention regarding the existence of a property right is necessary.

What is said in Board of Regents of State Colleges v. Roth, supra, is applicable:

"There might be cases in which a State refused to re-employ a person under such circumstances that interests in liberty would be implicated. But this is not such a case.

"The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, . . . of dishonesty, or immorality. Had it done so, this would be a different case. . . .

"Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. . . . Had it done so, this, again, would be a different case. . . ."

■ The only reasons assigned by the school board in the present case before the hearing were reduction of rapport with students and not being a trained media specialist. The only reasons assigned after the hearing were lack of initiative in organizing the media center, failure to cooperate in utilization of other facilities, failure to communicate with other teachers on the availability of the media facility, failure to initiate particular follow-up procedures, complaints from other teachers, and failure to implement the principal's recommendations for library utilization.

These do not amount to a denial of liberty within the meaning of the Fourteenth Amendment.

### III.

The plaintiff's counsel has cited Fisher v. Snyder, 476 F.2d 375 (C.A. 8th Cir. 1972), to support the proposition that a nontenured teacher is entitled to procedural due process. The statement in that case that:

"Nebraska by statute requires that notice and a hearing be given nontenured teachers who are to be terminated. Neb.Rev.Stat. § 79–1254."

is a reference only to state law, not to federal constitutional law. That case was decided by the Eighth Circuit on the basis solely of substantive due process and there was no issue of procedural due process. Lack of substantive due process stands on a level with dismissal for constitutionally impermissible reasons, such as race, religion, association or speech, and becomes significant even in the absence of a property or liberty interest. See Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Shelton v.

Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L. Ed.2d 231 (1960), and dissenting opinion of Judge Lay in Freeman v. Gould Special School District of Lincoln County, Arkansas, 405 F.2d 1153 (C.A. 8th Cir. 1969). The distinction between substantive and procedural due process was noted in Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), when the Supreme Court said:

"We may assume that Rachael Brawner could not constitutionally have been excluded from the Gun Factory if the announced grounds for her exclusion had been patently arbitrary or discriminatory . . . It does not follow, however, that she was entitled to notice and a hearing when the reason advanced for her exclusion was, as here, entirely rational and in accord with the contract with M & M."

The announced reason in the present case was not arbitrary or discriminatory on its face. Whether it was arbitrary in fact—that is, without any factual basis—could be determined in a court of law without a due process hearing before the board of education, but no charge of arbitrariness has been made or supported by the evidence here.

■ A decision by the Nebraska legislature to require a hearing for a teacher does not in itself give rise to a constitutional right that the hearing conform to procedural due process. What I said in Rozman v. Elliott, D.C., 335 F.Supp. 1086, 1100 (1971) remains my thought:

". . . As a matter of policy, it seems to me unwise to dampen a board of regents' willingness to grant hearings. Even an imperfect hearing, if held with the approval of the employee, is better than no hearing at all. A rule of law that a decision to grant any kind of hearing—even though not constitutionally required —automatically burgeons into a constitutionally imposed duty to follow all or some undefined segment of the elements of procedural due process, would do more to abort impendent de-

cisions to grant hearings than it would gain in procedural protections."

So, also, if a legislature knew that a hearing required by it would have to comply with the complexities of procedural due process, it might in future matters shy away from requiring a hearing. Nothing would be gained by that.

For the foregoing reasons I shall abstain from deciding this case on its merits and shall stay further proceedings in it pending resolution of the state law issues by the Supreme Court of Nebraska. If the plaintiff does not institute appropriate state litigation to determine those issues within a reasonable time, or if such litigation is commenced but not prosecuted with reasonable diligence, such further order as may be appropriate will be entered. It may be that the plaintiff will choose to have the federal constitutional issues also resolved by the state court, and I would have no resistance to that. This comment should not be interpreted as an urging by me. I neither favor nor disfavor it.