# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4135

_____

| | | |
|---|---|---|
| John Doe, a minor, by and through his mother and next friend, Mary Doe; Mary Doe, | * * * * | |
| Plaintiffs-Appellants, | * * | |
| v. | * * * | Appeal from the United States District Court For the District of Nebraska |
| The School District of the City of Norfolk, in the County of Madison, a/k/a School District Number 2 of Madison County, Nebraska, a political subdivision; Randy Nelson, in his individual and official capacities; James Scheer, in his individual and official capacities, | * * * * * * * * | |
| Defendants-Appellees. | * * * | |
| _____ | * * | |
| Anti-Defamation League, | * * | |
| Amicus on Behalf of Appellant. | * | |

_____

Submitted:  June 9, 2003
Filed:  August 20, 2003

_____

Before MORRIS SHEPPARD ARNOLD and RILEY, Circuit Judges, and BOGUE,[1] District Judge.

_____

BOGUE, District Judge.

Plaintiffs-Appellants John Doe, a minor, and Mary Doe, his mother and next friend, appeal the district court's[2] dismissal of their Establishment Clause claims which arose, in part, as a result of a recitation of a Christian prayer commonly known as the Lord's Prayer at a high school graduation ceremony. After careful consideration we conclude that the district court properly dismissed the action against each of the separate parties.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 10, 2000, School District Number Two of Madison County, Nebraska ("School District"), held a rehearsal in preparation of a ceremony honoring the graduating students of Norfolk Senior High School. The ceremony was scheduled for May 14, 2000. At the rehearsal, John Doe learned that the ceremony would include two separate prayers, an Invocation and Benediction. The separate prayers were placed on the program schedule after a meeting during which the students voted in favor of the traditional practice. Students were allowed to submit non-sectarian and non-proselytizing prayers for consideration. Principal Stephen Morton ("Morton") reviewed the proposed prayers, deleted proposed prayers which did not meet the specified criteria, and submitted the remaining prayers to a student committee for selection by vote. One student was ultimately selected to deliver the

_____

[1] The Honorable Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation.

[2] The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

Invocation and a different student was selected to give the Benediction. Morton explained to the students that they were to remain standing for the Invocation after the playing of the national anthem. He also instructed the males to remove their caps during the national anthem and Invocation.

After returning home from the rehearsal, John Doe, who had not participated in the student vote concerning the inclusion of the Invocation and Benediction at the ceremony, informed his mother, Mary Doe, of the scheduled prayers. Mary Doe proceeded to contact the American Civil Liberties Union ("ACLU"). On May 12, 2000, the ACLU informed Superintendent Randy Nelson ("Nelson") that legal action may be taken by a student if the Invocation and Benediction were included at the ceremony. Each member of the Board of Education ("School Board") was notified of the ACLU's contact with Nelson. The School Board, in response to an administrative recommendation, agreed to remove the prayers from the ceremony.

At the opening of the ceremony, which was attended by the Does, School Board President Brad Krivohlavek ("Krivohlavek") notified the audience of the change in the program. Videotapes recorded Krivohlavek's statement. In relevant part, Krivohlavek stated:

> Before we begin today's festivities, I feel I must share with you a change in today's program. With deepest regret from the Board and Administration and with our most sincere apologies to the Senior Class of 2000, we will need to remove the Invocation and Benediction from today's graduation ceremonies. Just a few days ago our Administration was notified by an ACLU attorney that the Norfolk Public Schools would be sued if it proceeded with the inclusion of prayer at graduation. The Board has also been told that this is now the law of the Eighth Circuit Court. After two days of intensive negotiations with legal officials from across the State, including advice from the State Supreme Court, the Board has been advised not to proceed with these prayers. While Norfolk Public Schools has been one of the last schools in the

State of Nebraska to continue to include prayer at graduation, we are saddened that it has come to this. The Board of Education hopes the graduates, parents, and community will understand and support this difficult decision.

The graduation ceremony proceeded without the scheduled Invocation.

At some point during the ceremony, Krivohlavek introduced James Scheer ("Scheer"), as a member of the School Board, stating that he had "a few words to share." Scheer was given access to the podium as a result of the School Districts' past practice of allowing School Board members, whose children were part of the graduating class, to address the students and the audience. Scheer's remarks were also captured on videotape. He stated:

> I promise to make this uh fairly short for me. There is a saying that when the door closes another one opens. We have been prohibited from doing some things at today's ceremony and it's brought me to a lot of reflections over the last couple of days. And when I have to reflect, I usually turn and ask for guidance. And one of the things that I usually do is to recite. So I am going to recite something, and I would ask and more so, encourage, any of you that this sounds familiar [sic] to please join in. Our Father, who art in heaven, hallowed be thy name. Thy kingdom come, thy will be done, on earth as it is in heaven. Give us our daily bread, and forgive us our trespasses as we forgive those who trespass against us and lead us not into temptation but deliver us from evil, for thine is the kingdom and the power and the glory forever. May God be with you always.

> Please, please take a seat. Back to my original discussion. You need to think about in [sic] the rest of your life in setting goals. And the real challenge is twofold. If you meet that goal, to reset an even higher goal. The bigger challenge, however, is when you set the goal and you're unable to obtain the goal, not to lower the goal. We will all have failures – physically, mentally and spiritually. Your charge is not to lower the bar, to keep the bar high. I'll leave you with this. From what

we learned Wednesday, we learned the meaning behind in [sic] how to say good-bye.  May God be with you always.  Congratulations.

The record reflects that as Scheer recited the Lord's Prayer, no students stood or removed their caps although two individuals on the stage did stand.  While no representative of the School District interrupted Scheer or disclaimed the recitation, there is no evidence that any School District officials knew about Scheer's intentions prior to his speech.  In fact, Nelson and Morton have indicated that they were shocked and surprised by Scheer's comments.

On November 29, 2001, the Does filed suit against the School District and against Nelson and Scheer both in their individual and official capacities, alleging violations of the Establishment Clause.  The School District and Nelson filed a motion to dismiss on January 25, 2002.  While the district court was considering the motion to dismiss, the parties participated in discovery.  On August 14, 2002, the district court dismissed the charges against the School District and against Nelson, in his official capacity.[3]  On September 3, 2002, the Does and Nelson, in his individual capacity, filed motions seeking summary judgment.  Several weeks later, on September 23, 2002, the Does formally filed a motion to amend their original complaint.  Also on September 23, 2002, Scheer filed a motion for judgment on the pleadings.  The district court denied the motion to amend the pleadings, granted summary judgment in favor of Nelson, and granted Scheer's motion for judgment on the pleadings after converting it to a motion for summary judgment.  The Does now appeal, raising numerous issues.

---

[3] An official capacity suit is treated as a suit against the governmental entity. See Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).  Thus, we will make no further reference to the allegations against Nelson, in his official capacity.

## II.  STANDING

Although standing was not addressed by the district court, we are obligated to consider the issue on appeal.  See U.S. v. Hays, 515 U.S. 737, 742, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (stating that federal courts have an independent obligation to examine jurisdictional issues).  "Standing is the constitutional requirement, imposed by the 'cases and controversies' provision of Article III, that a plaintiff must allege a judicially cognizable and redressable injury in order to pursue a lawsuit."  Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County, 115 F.3d 1372, 1378 (8th Cir. 1997) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555,559-560, 112 S.Ct. 2130, 2135-36, 119 L.Ed.2d 351 (1992)).  Establishing standing requires a plaintiff to demonstrate the following: "(1) an 'injury in fact' that is both (a) concrete and particularized, and (b) actual or imminent, rather than conjectural or hypothetical; (2) a causal connection between the alleged injury and the defendant's conduct; that is, that the injury is 'fairly traceable' to the challenged action; and (3) that it is likely that a favorable decision will redress the injury."  Id. (quoting Lujan, 504 U.S. at 560-561, 112 S.Ct. at 2136-37).

Scheer does not challenge the Does' standing to bring suit against him.  Similarly, the School District and Nelson do not dispute the Does' standing on issues related to the allegation that they authorized or coerced participation in Scheer's recitation of the Lord's Prayer.  We have little trouble finding that the Does have standing to challenge Scheer's action as well as the School District's and Nelson's potential involvement in Scheer's comments.  The Does were subjected to an unwelcome religious recitation at a school function and therefore have standing to challenge the action.  See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 487 n.22, 102 S.Ct. 752, 762, 70 L.Ed.2d 700 (1982) (noting that when impressionable schoolchildren are subjected to unwelcome religious exercises, the standing requirement is satisfied).

Whether the Does have standing to sue the School District, Nelson, and Scheer, to challenge the School District's past policy of allowing prayer at graduation ceremonies, presents a much closer issue. The Does argue that they have standing based upon the government endorsement of religion at the mandatory graduation rehearsal. In response, the School District and Nelson argue that the Does could not have suffered an "injury in fact" as a result of the policy because the Invocation and Benediction were cancelled prior to the graduation ceremony.

John Doe was instructed, at the graduation rehearsal, of the planned Invocation and Benediction, as well as the proper conduct during the Invocation. As Judge Kopf noted in ACLU v. City of Plattsmouth, NE, 186 F.Supp.2d 1024 (D. Neb. 2002), other circuits have determined that an allegation of direct personal contact with offensive acts alone is sufficient to satisfy the standing requirement. Id. at 1030-1031 (citing Foremaster v. City of St. George, 882 F.2d 1485 (10th Cir. 1989), cert. denied, 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990); Saladin v. City of Milledgevile, 812 F.2d 687 (11th Cir. 1987); Hawley v. City of Cleveland, 773 F.2d 736 (6th Cir. 1985) cert. denied 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986)). However, this case presents a situation where John Doe was simply informed that offensive conduct was scheduled to occur. We simply cannot find that this occurrence satisfies the "injury in fact" element of the standing analysis.

Additionally, we note that the Does, in their complaint, sought a declaration that the recitation of the prayer at the ceremony violated their constitutional rights. As a result of this specific deprivation, they requested damages for emotional distress, mental anguish, humiliation, embarrassment, and other injuries related to the alleged violation of their constitutional rights. The Does have failed to even assert that the School District's past policy caused them any injury. As such, the School District's past policy of allowing an Invocation and Benediction at the graduation ceremony was never before the district court and similarly is not before us for consideration.

III.  DISCUSSION

The alleged Establishment Clause violation, addressed by the district court in its summary judgment opinion, is Scheer's recitation of the Lord's Prayer.  We begin our analysis by focusing on Scheer's conduct at the graduation ceremony, reviewing the district court's grant of summary judgment de novo and applying the same standards.  Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000).

A.     Motion For Summary Judgment

In granting summary judgment in favor of Scheer and Nelson, in his individual capacity, the district court cited Adler v. Duval County School Board, 206 F.3d 1070, 1080 (11th Cir. 2000) (en banc), reinstated, Adler v. Duval County School Board, 250 F.3d 1330 (11th Cir. 2001),[4] stating that not every speaker at a high school graduation should be considered a state speaker.  However, the district court ultimately supported its decision by applying the well-known tests enumerated by the Supreme Court in Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) and Lee v. Weisman, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992).  Considering the unique facts and circumstances surrounding this case, we feel that the "private" speech argument raised by Scheer warrants specific consideration.

As the Supreme Court recently restated, with approval, "'there is a crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and

---

[4] Hereafter, Adler v. Duval County School Board, 206 F.3d 1070, 1080 (11th Cir. 2000) (en banc), reinstated, Adler v. Duval County School Board, 250 F.3d 1330 (11th Cir. 2001) shall be referred to as Adler I, whereas, Adler v. Duval County School Board, 250 F.3d 1330 (11th Cir. 2001) shall be referred to as Adler II.

Free Exercise Clauses protect.'" Santa Fe Independent School District v. Doe, 530 U.S. 290, 303, 120 S.Ct. 2266, 2275, 147 L.Ed.2d 295 (2000) (quoting Board of Ed. of Westside Community Schools (Dist. 66) v. Mergens, 496 U.S. 226, 250, 110 S.Ct. 2356, 2372, 110 L.Ed.2d 191 (1990) (opinion of O'Connor, J.)). The issue before us involves the constitutional rights of a parent who is also a member of the School Board, rather than those of a student. While expressly noting this distinction, we believe applicable principles can be gleaned from the analysis provided in Santa Fe.

In Santa Fe, the Supreme Court specifically addressed the private speech issue, rejecting an argument that student-led prayer before football games was constitutionally protected private speech and not public speech. 530 U.S. at 302, 120 S.Ct. at 2275. Critical to Santa Fe's conclusion was the determination that the speech delivered by a student pursuant to the school policy was state-sponsored rather than private. Adler II, 250 F.3d at 1336; Chandler v. Siegelman, 230 F.3d 1313, 1315 (11th Cir. 2000) (noting that Santa Fe prohibits school sponsorship of student prayer) . In reaching this conclusion, the Supreme Court indicated that the "degree of school involvement" made it clear that the prayers bore "the imprint of the State[.]" Santa Fe, 530 U.S. at 305, 120 S.Ct. at 2277 (quoting Lee, 505 U.S. at 590, 112 S.Ct. at 2657). Because Scheer's remarks were not sponsored and did not bear the imprint of the state, we find that his recitation of the Lord's Prayer was constitutionally protected private speech.

Our focus on the degree of school sponsorship or involvement in Scheer's recitation begins with the Does' assumption that Scheer's comments were made in his representative capacity as an official of the State. While Scheer is undeniably linked to the School District because of his membership on the School Board, we do not believe this connection requires us to automatically reject Scheer's private speech argument. Cf. Brentwood Academy v. Tennessee Secondary School Athletic Association et al., 531 U.S. 288, 295-296, 121 S.Ct. 924, 930, 148 L.Ed.2d 807

(2001) (citation omitted) (stating that no single fact nor set of facts is absolutely sufficient to find state action).

The Does contend that pursuant to Nebraska law, school board members "act in a representative capacity, not as individuals." Greer v. Chelewski et al., 76 N.W.2d 438, 441 (Neb. 1956) (citing Arehart v. School Dist. No. 8, 589 N.W. 540, 542 (Neb. 1940)). In Greer, the plaintiff sought to have the individual members of the school board separately answer her request for admissions. Id. The board members filed one reply, which listed their names but was signed by their attorney. Id. The court determined that the acceptance of the reply was proper, finding that the members of the school board were appearing on behalf of the school district and not as individuals. Id. In contrast, whether Scheer was acting individually or on behalf of the School Board is not quite so obvious. We believe that the informal policy which allowed Scheer to address the audience, the facts surrounding his speech, and the contents of the speech itself indicate sufficient separation between Scheer and his membership on the School Board to warrant a determination that his remarks were private and were not made in his representative capacity as an official of the School District.

The School District's informal policy required that Scheer meet two separate criteria prior to speaking at the graduation ceremony; (1) a parent of a graduating senior; and (2) a member of the School Board.[5] Both requirements, parental and School Board membership, were of equal importance and therefore the informal policy criteria neither favor nor oppose a private speech determination. The parental criterion indicates that Scheer was not acting solely in a representative capacity as a member of the School Board, and the membership requirement indicates that Scheer was not acting solely as a parent. However, the existence of the parental requirement

---

[5] As the district court appropriately determined, this informal policy has no constitutional deficiencies.

is extremely significant and therefore we reject the argument that Scheer spoke only in his official capacity as a member of the School Board. We do not believe that Scheer's membership on the School Board requires a finding of state-sponsorship, rather, we view it merely as one of the factors which supports the involvement of the state in the recitation of the prayer.

Santa Fe, in reaching its conclusion, places significant emphasis on the written policy which subjected the student's speech to specific regulations confining both the topic and the content of the message. Santa Fe, 530 U.S. at 303, 120 S.Ct. at 2276. In contrast, this dispute involves no formal policy implemented by the School District by which it participated or approved of Scheer's comments. In fact, there is no evidence that any representative of the School District had any knowledge of Scheer's intentions. The 11th Circuit, considering a student-led graduation prayer dispute, found Santa Fe to reinforce the notion that "[t]he total absence of state involvement in deciding whether there will be a graduation message, who will speak, or what the speaker may say combined with the student speaker's complete autonomy over the content of the message [means] that the message delivered, be it secular or sectarian or both, is not state-sponsored." Adler II, 250 F.2d at 1342 (quoting Adler I, 206 F.3d at 1071). We agree with the 11th Circuit's application of the principles derived from Santa Fe. The complete absence of any involvement by the School District in determining whether Scheer would deliver a speech as well as the complete autonomy afforded to Scheer in determining the content of his remarks indicates a lack of state-sponsorship of his recitation.

Santa Fe does not provide an answer to the question of when religious speech at a school function can be considered private, and thus, protected. See Chandler, 230 F.3d at 1316. However, it notes that one relevant inquiry is "'whether an objective observer, acquainted with the text, legislative history, and implementation of the statute, would perceive it as a state endorsement of prayer in public schools.'" Santa Fe, 530 U.S. at 308, 120 S.Ct. at 2278 (quoting Wallace v. Jaffree, 472 U.S. 38,

76, 105 S.Ct. 2479, 2500, 86 L.Ed.2d 29 (1985) (O'Connor, J., concurring in judgment)). Applying this precedent, the Supreme Court determined that "an objective Santa Fe High School student will unquestionably perceive the inevitable pre-game prayer as stamped with her school's seal of approval." Santa Fe, 530 U.S. at 308, 120 S.Ct. at 2278.

Within the context of our case, Scheer was introduced as a member of the School Board and no official made an attempt to disassociate the School District from the recitation. However, the students and the audience were clearly and unequivocally notified by Krivohlavek of the administrative decision, approved by the School Board, that no prayers would be held at the ceremony. In addition, Scheer's comments, made immediately prior to his recitation of the Lord's Prayer, further distance his conduct from the School District. When Scheer referred to the decision to cancel the Invocation and the Benediction, he used the term "we," a clear reference to the School Board. As Scheer's remarks progressed toward his recitation of the Lord's Prayer, he began to use the terms "I" and "me," indicative of a personal statement. An objective Norfolk Senior High student would undoubtedly perceive Scheer's comments as his own private remarks. The facts surrounding Scheer's speech, including the speech itself, further evidence the complete lack of school involvement or sponsorship in his remarks.

Scheer undeniably took advantage of his School Board membership to gain access to a forum in which he could espouse his personal views. However, private speech is constitutionally protected, even though it occurs at a school related function. See Chandler, 230 F.3d at 1317. While recognizing Scheer's School Board affiliation and the principle that "free exercise of religion does not supersede the fundamental limitations imposed by the Establishment Clause," Lee, 505 U.S. at 587, 112 S.Ct. at 2655, the lack of involvement in Scheer's conduct on the part of the School District requires a determination that the recitation of the Lord's Prayer constituted private speech. The "religious liberty protected by the Constitution is

abridged when the State affirmatively sponsors the particular religious practice of prayer." Santa Fe, 530 U.S. at 313, 120 S.Ct. at 2281. There being no affirmative sponsorship of the practice of prayer in this case, no constitutional violation has occurred.

B.      Motion to Dismiss

Our private speech determination does not necessarily end this matter. In addition to the constitutionality of Scheer's recitation, the Does allege that the School District and Nelson authorized or coerced their participation in the prayer. Prior to its grant of summary judgment to Scheer and Nelson, in his individual capacity, the district court had dismissed the claims against the School District. We review the dismissal of a claim pursuant to Fed. R. Civ. P. 12(b)(6) de novo. See Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998). A complaint must not be dismissed under 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief." Gordon v. Hanson, 168 F.3d 1109, 1113 (8th Cir. 1999). "[W]e accept the complaint's factual allegations as true and construe them in a light most favorable to the plaintiff." Id.

Relying in part on Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the district court dismissed the complaint against the School District. According to Monell, entities such as the School District can only be sued under § 1983 if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690, 98 S.Ct. at 2035-2036. Additionally, a deprivation of a constitutional right pursuant to a governmental "custom" is also actionable. Id. Applying Monell, the district court determined that the allegations found in the Does' complaint did not support a finding that the School District had any custom or policy supporting Scheer's recitation of the

Lord's Prayer. We believe that the district court's grant of the motion to dismiss was proper. In addition, we reject the arguments raised by the Does on appeal.

The Does seek the opportunity to challenge the School District's graduation prayer policy. Our determination that the Does lacked standing to challenge the School District's graduation prayer policy necessarily precludes any further argument addressing this particular issue. However, the Does also seek to connect the School District to Scheer's recitation. In pursuit of this objective, the Does argue that their original complaint was sufficient to withstand a motion to dismiss. Specifically, they contend that the law requires no heightened pleading requirement in a § 1983 action against an entity such as a school district.[6] See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). On the other hand, the School District and Nelson suggest that the Does' failure to plead the existence of a policy or custom that caused the deprivation of a federal right requires dismissal. See Caldwell v. City of Elwood, Ind., 959 F.2d 670, 673 (7th Cir. 1992) (stating that a § 1983 complaint must plead the existence of a unconstitutional custom or policy).[7]

We cannot agree that the Does, seeking to sue the School District, must plead the specific existence of an unconstitutional policy or custom. When a complaint is

---

[6] In briefing, the Does raise this argument in support of their opposition to the district court's denial of their motion to amend. Because this argument supports their opposition to the district court's dismissal of the School District, we address the contention at this juncture.

[7] In support of its position, the School District Sanders v. Sears, Roebuck & Co., 984 F.2d 972 (8th Cir. 1993). In Sanders, we stated that the plaintiff had failed to plead that Sears had a policy or custom which caused the deprivation of a federal right. Id. at 976. This comment, made in the context of our review of a grant of summary judgment, does not support the proposition that a plaintiff must plead the specific existence of an unconstitutional policy, custom, or procedure.

filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right. Moreover, such a holding would disregard the liberality of Fed. R. Civ. P. 8(a)(2) which requires merely "a short and plain statement of the claim showing that the pleader is entitled to relief," and 8(f), which states "pleadings shall be so construed as to do substantial justice." Thus, the failure of the Does to specifically plead the existence of an unconstitutional policy or custom, in itself, is not fatal to their claim for relief. The deficiency of their complaint is the complete absence of allegations, reference, or language by which one could begin to draw an inference that the conduct complained of, namely, Scheer's recitation, resulted from an unconstitutional policy or custom of the School District. At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom. See Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 532-533 (5th Cir. 1996) (stating that a plaintiff must plead facts to support the existence of a policy or custom).

The Does make several additional arguments which they believe expose the School District to potential liability. The Does contend that the School District is liable for their injuries because the School District had a pattern, policy, and practice of endorsing prayer which resulted in the establishment of religion at the graduation rehearsal. The fact that the Does, through subsequent discovery, uncovered the existence of a formal written policy which approved of student-led prayer at graduation ceremonies is not relevant to our determination regarding the adequacy of the pleadings. Moreover, with regard to the complaint, the graduation rehearsal allegations do not give rise to an inference of an unconstitutional policy or procedure of the School District. See Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (stating that a single incident is insufficient to establish a policy). Thus, the Does' argument is without merit.

Second, the Does argue that Nelson and the School Board are liable for Scheer's conduct because they improperly endorsed the prayer. In support of this argument, the Does rely upon Steele v. Van Buren Public School District, 845 F.2d 1492 (8th Cir. 1988). In Steele, a teacher began leading the band in prayer at rehearsals and performances. Id. at 1493. The superintendent and the school board were made aware of the objections to the practice but took no formal action. Id. at 1494. A parent of the student sued and the district court entered a permanent injunction prohibiting the challenged practice. Id. On appeal, the determination was made that the school board's failure to act and the superintendent's approval of the conduct subjected the school district to liability. Id. at 1495-1496. However, Steele does not stand for the naked proposition that a school district can incur liability when its school board members or representatives fail to act or tacitly approve of a religious exercise. Rather, the case holds that the failure to act and tacit approval of a religious exercise supports a finding of the existence of a custom or policy of allowing prayer in school. Id. at 1495. A factual distinction is clearly present between Steele and this present controversy. In Steele, the teacher continued to pray, with the knowledge of the superintendent and the school board, for several months, id. at 1493-1494, whereas in this situation, only a single religious recitation occurred. The failure to disclaim one single religious exercise surely does not support the existence of a custom or policy.

Finally, the Does argue that the School District incurred liability because Scheer's actions were attributable to the School District. The Does contend that a municipality is exposed to liability if a governmental official was granted authority and permission to speak for the entity. In support of their contention, the Does cite Pembauer v. City of Cincinnati et al., 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed. 452 (1986). Pembauer indicates that a municipality may incur liability for a single act by municipal policymakers under appropriate circumstances, see id. at 480, 106 S.Ct. at 1298, and holds that "municipal liability under § 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various

alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. at 484, 106 S.Ct. at 1300 (citing Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985)). The district court found that the allegations in the complaint indicated that Scheer was acting in circumvention of the School District's policy when the Lord's Prayer was recited, and did not support a conclusion that they acted with final policymaking authority. We agree with the district court and therefore affirm its grant of the motion to dismiss in favor of the School District.[8]

C.    Motion to Amend

Finally, we address the Does' contention that the district court erred by failing to grant their motion to amend the complaint. We review the district court's denial of the Does' motion to amend for abuse of discretion. See Concordia College Corp. v. W.R. Grace & Co., 999 F.2d 326, 330 (8th Cir. 1993), cert. denied, 510 U.S. 1093, 114 S.Ct. 926, 127 L.Ed.2d 218 (1994). "Although it is well settled that leave to amend should 'be freely given when justice so requires,' Fed. R. Civ. P. 15(a), permission to amend may be withheld if the plaintiff does not have at least colorable grounds for relief, or if she is guilty of undue delay, bad faith, dilatory motive, or if permission to amend would unduly prejudice the opposing party." Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 224 (8th Cir. 1994) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)).

The district court refused to grant leave to amend, finding the amendment would prejudice the School District. The district court also determined that allowing leave to amend would result in significant delay. We find that the district court did

---

[8] Our determination that the district court appropriately granted the School District's motion to dismiss precludes a finding that Mary Doe's substantive due process right to parental autonomy was violated.

not abuse its discretion in refusing to grant leave to amend the complaint. First, the Does did not seek leave to amend until September 23, 2002, over a month after the School District had been formally dismissed from the lawsuit. Second, Nelson, in his individual capacity, had already filed a motion for summary judgment. More notably, the Does themselves had filed a motion for summary judgment. Third, the trial of this matter had already been scheduled and the trial date was approaching.

Additionally, we note that "different considerations apply when a party seeks to amend the pleadings after the district court dismisses the complaint." In re Nationsmart Corp. Securities Litig. v. Thaman, 130 F.3d 309, 322 (8th Cir. 1998) (citing United Food and Commercial Workers Int'l Union v. Brown Group, Inc., 50 F.3d 1426, 1432 (8th Cir. 1995), rev'd on other grounds, 517 U.S. 544, 116 S.Ct. 1529, 134 L.Ed.2d. 758 (1996)). In the case before us, the Does were put on notice of potential deficiencies in their complaint when the School District and Nelson filed their motion to dismiss on January 25, 2002. However, the Does waited to seek leave to amend until September 23, 2002, over a month after the dismissal of the claims against the School District. Unexcused delay, by itself, is sufficient to justify the district court's denial of the motion to amend. See In re Nationsmart, 130 F.3d at 322.

The judgment of the district court is AFFIRMED

RILEY, Circuit Judge, concurring.

I concur completely in the majority opinion. I write briefly, and with great respect, to address the dissent. I agree Scheer recited a prayer at a state sponsored event by using his positions as a School Board member and a parent to address the assemblage. As the dissent explains, Scheer was determined the ceremony would include a prayer "despite the school board's decision that it would not be." That is the point. Scheer *privately* decided to oppose the School Board's public decision not

to include prayer in the graduation ceremony by reciting the Lord's Prayer during his remarks. Scheer openly opposed and personally protested the School Board's decision, a classic exercise of free speech, through this religious act. No evidence exists Scheer spoke on the Board's behalf as opposed to protesting the Board's decision. The School District had no prior knowledge of Scheer's protest. The School District did not plan or approve the prayer, did not sponsor the prayer, and did not collude or conspire with Scheer. The undisputed facts establish the District's Board thoroughly researched Doe's complaint, decided to remove the invocation and benediction from the graduation ceremony, and announced the Board's decision to the audience, before Scheer registered his protest. Based on this record, no reasonable person could conclude from these circumstances, and Scheer's specific remarks, that Scheer was doing anything other than protesting the School Board's decision.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

I dissent from the part of the court's judgment that upholds Mr. Scheer's quite transparent effort to use his public office to thwart the efforts of the anonymous plaintiffs to ensure that the Constitution is observed. The court refers to all the apposite authorities, but, with respect, I believe that it applies them incorrectly. In my view, in the context in which Mr. Scheer was operating, it is apparent that an objective observer could see his actions as state-sponsored. *See Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 308 (2000). He was acting as a member of the school board in an environment in which the recent school-prayer controversy had already been alluded to; indeed, the school board president, instead of merely passing the matter by, had intentionally expressed his displeasure that the first amendment had been invoked and the plans for an invocation abandoned. It is at the very least a jury question whether an objective observer would regard Mr. Scheer's "speech" as state-sponsored.

It needs saying directly, though the court does not say so, that Mr. Scheer was not merely speaking, he was praying. He invoked the deity. He "spoke" in the vocative case and he invited others to join in. He recited a prayer that must have been familiar to everyone who was present. This was a religious act, pure and simple, at a state-sponsored event by a state actor who, or so at least a reasonable person could conclude, was determined that the ceremony would be outfitted with a benediction despite the school board's decision that it would not be. This was the manifest purport of Mr. Scheer's statement that "there is a saying that when the door closes another one opens." For that action, Mr. Scheer should be required to respond in damages.

I therefore respectfully dissent.


A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.