Question Submitted by: The Honorable Bobby Cleveland, State Representative, District 20
2015 OK AG 9
Decided: 10/06/2015
Oklahoma Attorney General Opinions

Cite as: 2015 OK AG 9, __ __

 
¶0 This office has received your request for an official Attorney General opinion in which you ask the following question:
May a public school district or a publicly funded association that has been delegated control of certain school athletic events by public school districts ban or prohibit voluntary student speech because of the speech's religious viewpoint if the speech is expressed during opening remarks before athletic events, the student-speaker chooses the message for the opening remarks without any government official involvement, and the student-speaker is chosen through neutral criteria that is completely unrelated to the viewpoint of the student's speech, as long as the student does not engage in any of the limited categories of speech a school district may ban as outlined in Bethel School District v. Fraser, 478 U.S. 675 (1986) and Morse v. Frederick, 551 U.S. 393 (2007)?

¶1 Recently, the Oklahoma Secondary School Activities Association ("OSSAA") revised its policy regarding publicly recited prayer at OSSAA playoff and championship events.[1] Approved by OSSAA's Board of Directors at its June 9, 2015, meeting, that policy now states:

In view of current law, no school, individual, group, or organization may publicly recite a prayer to all attendees and participants, or invite all attendees and participants to pray, whether audibly or in silence, at OSSAA championship events, or at regional, area, district or other playoff events leading to championship events. This policy applies even if the proposed prayer is nondenominational, or is offered voluntarily by a student, or by a parent or other adult who is not associated with OSSAA or a member school.[2]

It is our understanding that this policy revision prompted your question.

¶2 The First Amendment to the U.S. Constitution contains both the Establishment Clause, providing that "Congress shall make no law respecting an establishment of religion," and the Free Speech Clause, providing that Congress shall not abridge the freedom of speech. U.S. Const. amend. I. Your question relates to how these two Clauses intersect and, more particularly, the balance between the Establishment Clause's concept of neutrality and the Free Speech Clause's concept of the limited public forum. We examine this balance below.

I.

A Public School District or a Publicly Funded Association Creates a Limited Public Forum When it Selects Through Neutral, Evenhanded Criteria a Student Speaker to Make Opening Remarks Before a School Athletic Event.

A. A public school district or a publicly funded association is not required to create a limited public forum, but where such a forum is created, a student speaker's First Amendment Free Speech rights are implicated.

¶3 At the outset, it is important to note that "speech which is constitutionality protected against state suppression is not . . . accorded a guaranteed forum on all property owned by the State." Capitol Square Review Bd. & Advisory Bd. v. Pinette, 515 U.S. 753, 761 (1995). "The right to use government property for one's private expression depends upon whether the property has by law or tradition been given the status of a public forum, or rather has been reserved for specific official uses." Id.

¶4 Unquestionably, a public school district, and by extension a publicly funded association, "like the private owner of property, may legally preserve the property under its control for the use to which it is dedicated." Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist., 508 U.S. 384, 390 (1993). That is, "the government may limit speech that takes place on its own property without running afoul of the First Amendment." Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211, 225 (2003). To do so, a public school district or a publicly funded association must simply elect not to open its nonpublic forum to public use.

¶5 However, when a public school district or a publicly funded association acts to open that forum to speech, the Free Speech rights enshrined in the First Amendment may be triggered. This is so because "[w]here . . . the property at issue is a traditional public forum or a forum designed as public by the government, the First Amendment hinders the government's ability to restrict speech." Id. Indeed, if a forum is public, the State "may regulate expressive content only if such a restriction is necessary, and narrowly drawn, to serve a compelling state interest." Capitol Square Review & Advisory Bd., 515 U.S. at 761 (emphasis omitted).

¶6 A limited public forum is a subcategory of the designated public forum that "is created when the government opens a nonpublic forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain kinds of subjects." Donovan ex rel. Donovan, 336 F.3d at 225 (internal quotation omitted). Your question contemplates a limited public forum--a public forum that has been opened to student speech limited to certain kinds of subjects, here, presumably, opening remarks applicable to a school athletic event. We examine below in greater detail how such a limited public forum is created.

B. A limited public forum is created when students are selected through neutral criteria to make opening remarks limited to certain kinds of subjects as identified by a public school district or a publicly funded association.

¶7 Limited public forums can be created pursuant to lawful boundaries a public school district or a publicly funded association sets for itself. For example, in Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist., 508 U.S. 384, 390 (1993), the U.S. Supreme Court recognized the creation of a limited public forum where a school district policy permitted after-hours use of school property for ten specified purposes, including for "social, civic and recreational meetings and entertainments, and other uses pertaining to the welfare of the community[.]" Id. 508 U.S. at 386 (citation omitted). Indeed, both the district court and the court of appeals below acknowledged that the school district had created a limited public forum, with the appellate court holding that school property was "a limited public forum open only for designated purposes, a classification that 'allows it to remain non-public except as to specified uses.' " Id. at 389-90 (citation omitted). The Court again reviewed this same district use policy and the subsequent creation of a limited public forum in Good News Club v. Milford Central School, 533 U.S. 98, 102-03 (2001).

¶8 And in Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211, 225 (2003), the U.S. Court of Appeals for the Third Circuit acknowledged the creation of a limited public forum where a school policy created an " 'activity period'--a time during which . . . noncurriculum related student groups met." Id., 336 F.3d at 214. This activity period created "free reign in a closed universe," allowing students to choose between club meetings, study hall, student government gatherings, tutoring programs, or college prep clinics, to name just a few. Id. The school allowed clubs and groups to seek permission to meet during the activity period, and "[a]mong the voluntary, noncurriculum related groups that [met] . . . [we]re the ski club, an anti-alcohol and anti-tobacco club called Students Against Destructive Decisions, and the future health services club." Id. at 214-15.

¶9 In those cases, school officials created opportunities for the community to use school property after hours and for students to use school time. Those opportunities were limited, however, by the restrictions placed on the use of school property--for ten specified purposes--and on the use of school time--for one of the enumerated purposes including for a school club meeting. Indeed, those opportunities represented "free reign in a closed universe."

¶10 Conversely, in Santa Fe Independent School District v. Doe, 530 U.S. 290 (2000), a school district attempted to create a limited public forum, but failed to do so because of the manner in which that closed universe was created. There, the Santa Fe Independent School District crafted a policy permitting, but not requiring, prayer initiated and led by a student before varsity football games. Id. at 294. The policy--crafted during the pendency of litigation challenging the district's historic delivery of prayer before all such games--was premised on two student elections: the first determining "whether 'invocations' should be delivered" and the second selecting who should deliver them. Id. at 297. In rejecting the District's argument that it had created a limited public forum, the Court held that school officials had not evinced in policy or practice "any intent to open the pregame ceremony to indiscriminate use by the student body generally." Id. at 303 (internal quotation omitted). Importantly, the Court noted:

Granting only one student access to the stage at a time does not, of course, necessarily preclude a finding that a school has created a limited public forum. Here, however, Santa Fe's student election system ensures that only those messages deemed "appropriate" under the District's policy may be delivered. That is, the majoritarian process implemented by the District guarantees, by definition, that minority candidates will never prevail and that their views will be effectively silenced.

Id. at 304.

¶11 At bottom, the Court identified two problems with the district's policy: "[t]he plain language of the policy clearly spell[ed] out the extent of school involvement in both [(1)] the election of the speaker and [(2)] the content of the message." Id. at 314-15. Because of the school's involvement in the election of the speaker and the content of the message, the policy had not created a limited public forum for the expression of student speech at all, id. at 315, but had "establish[ed] an improper majoritarian election on religion," with the purpose and the effect "of encouraging the delivery of prayer at a series of important school events," id. at 317. As such, the Court found the district's policy violative of the Establishment Clause. Id. at 301.

¶12 Santa Fe Independent School District does not, however, stand for the proposition that a high school football game, or other athletic event, never constitutes a limited public forum. On the contrary, opening remarks before such events may provide a limited public forum for student speech if (1) a student speaker is selected through neutral criteria and (2) the school district or the association does not involve itself in the content of the student's speech. For example, a school district or an association may have a policy permitting opening remarks before athletic events, limiting those remarks to the giving of a motivational speech on safe play, sportsmanship-like behavior, and general announcements, and selecting a student through an evenhanded process to deliver those remarks, all without violating the Establishment Clause.[3] 

II.

Where a Public School District or a Publicly Funded Association Creates a Limited Public Forum, Viewpoint Discrimination Based on the Religious Content of Speech is Unconstitutional.

A. Once a limited public forum is created, a public school district or a publicly funded association must respect the boundaries it sets for itself and cannot censor ideas that fit within those boundaries.

¶13 In Rosenberger v. Rector and Visitors of University of Virginia, 515 U.S. 819 (1995), the Supreme Court held that once a limited public forum has been opened, "the State must respect the lawful boundaries it has itself set." Id. at 829. "The State may not exclude speech . . . nor may it discriminate against speech on the basis of its viewpoint." Id. Such exclusion constitutes viewpoint discrimination--"an egregious form of content discrimination." Id. "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." Id.

¶14 Returning to Lamb's Chapel, for example, the Court considered a policy that opened school facilities for after-hours use to community groups for social, civic, and recreational purposes, 508 U.S. at 386, and reviewed whether the school district violated the Free Speech Clause when it "den[ied] a church access to school premises to exhibit for public viewing and for assertedly religious purposes, a film series dealing with family and child-rearing issues faced by parents," id. at 387. The Court held that "[t]he church group in Lamb's Chapel would have been qualified as a social or civic organization, save for its religious purpose." Rosenberger, 515 U.S. at 832.

¶15 Therefore, if a school district or association creates a policy permitting opening remarks before athletic events but limits those remarks to the giving of a motivational speech on safe play, sportsmanship-like behavior, and general announcements, and then selects a student-speaker through an evenhanded process to deliver those remarks, it cannot then censor that student-speaker's speech if those remarks are made from a religious viewpoint. This is so because "speech discussing otherwise permissible subjects cannot be excluded from a limited public forum on the ground that the subject is discussed from a religious viewpoint." Good News Club, 533 U.S. at 112.

¶16 Further, a public school district or a publicly funded association cannot cite its fear of violating the Establishment Clause as the reason for censoring speech, as this reasoning has been nearly universally rejected by the Supreme Court. See Rosenberger, 515 U.S. at 839 ("We have held that the guarantee of neutrality is respected, not offended, when the government following neutral criteria and evenhanded policies, extends benefits to recipients whose ideologies and viewpoints, including religious ones, are broad and diverse."); see also Donovan ex rel. Donovan, 336 F.3d at 226.

¶17 Therefore, once a school district or an association creates a limited public forum, it must respect the lawful boundaries it sets for itself and cannot restrict speech fitting within that limited public forum simply because it reflects a religious viewpoint.

B. A public school district or a publicly funded association may, nevertheless, restrict speech that is disruptive to the work of the school, that is lewd, or that encourages illegal drug use without violating a student's Free Speech rights. 

¶18 Nevertheless, pursuant to Supreme Court precedent, a public school district or a publicly funded association may, at times, restrict speech without violating the Free Speech Clause. First, in the seminal case of Tinker v. Des Moines Independent Community School District, 393 U.S. 503 (1969), the Supreme Court held that "[i]t can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Id. at 506. There, the Court reviewed a school district's last-minute policy banning the display of black arm bands worn to protest the Vietnam War. Id. at 514. Despite protecting the students' silent demonstration, the Court held that student speech is not immunized if it materially and substantially interferes with the work of the school or invades the rights of others. Id. at 513.

¶19 These concepts were further explored in Bethel School District Number 403 v. Fraser, 478 U.S. 675 (1986) and Morse v. Frederick, 551 U.S. 393 (2007). In Fraser, the Court held that "[t]he schools, as instruments of the state, may determine that the essential lessons of civil, mature conduct cannot be conveyed in a school that tolerates lewd, indecent, or offensive speech and conduct." Id., 478 U.S. at 683. Rather, the Court found the Bethel School District "acted entirely within its permissible authority" when it imposed sanctions on a student that delivered an "offensively lewd and indecent speech" at a school assembly. Id. at 685.

¶20 Drawing from the holding in Fraser, the Court instructed in Morse that two basic principles could be distilled from the Fraser case: (1) "that 'the constitutional rights of students in public schools are not automatically coextensive with the rights of adults in other settings' " and (2) "that the mode of analysis set forth in Tinker is not absolute." Morse, 551 U.S. at 404-05 (citation omitted). From these two basic principles, the Court held that a school district properly sanctioned a student for unfurling a fourteen-foot banner that promoted illegal drug use. Id. at 397, 408.

¶21 Considering these cases as a whole, a public school district or a publicly funded association may restrict speech that materially and substantially interferes with the work of the school, that is lewd and indecent, or that promotes illegal drug use. But because these cases were decided roughly coextensively with Rosenberger, Lamb's Chapel, and Good News Club, they should not be viewed as abrogating the Free Speech rights of students, particularly when a student expresses a religious viewpoint within a limited public forum. Indeed, respect for religious viewpoint within a limited public forum has even been extended to prayer specifically.[4]

C. Consistent with the Supreme Court cases discussed above, the U.S. Department of Education has issued guidelines reflecting that a school district that has created a limited public forum cannot engage in viewpoint discrimination.

¶22 The conclusion we reach today is in parity with U.S. Department of Education guidelines issued on February 7, 2003.[5] Those guidelines were generated in response to the requirements of the Elementary and Secondary Education Act of 1965, as amended by the No Child Left Behind Act of 2001. Specifically, federal law requires the Secretary of the Department of Education to "provide and revise guidance . . . to State educational agencies, local educational agencies, and the public on constitutionally protected prayer in public elementary schools and secondary schools, including making the guidance available on the Internet." 20 U.S.C. § 7904(a). Compliance with these guidelines is a condition of receiving funds under the No Child Left Behind Act. Id. § 7904(b).

¶23 Those guidelines provide the following:

Student Assemblies and Extracurricular Events

Student speakers at student assemblies and extracurricular activities such as sporting events may not be selected on a basis that either favors or disfavors religious speech. Where student speakers are selected on the basis of genuinely neutral, evenhanded criteria and retain primary control over the content of their expression, that expression is not attributable to the school and therefore may not be restricted because of its religious (or anti-religious) content. By contrast, where school officials determine or substantially control the content of what is expressed, such speech is attributable to the school and may not include prayer or other specifically religious (or anti-religious) content. To avoid any mistaken perception that a school endorses student speech that is not in fact attributable to the school, school officials may make appropriate, neutral disclaimers to clarify that such speech (whether religious or nonreligious) is the speaker's and not the school's.[6]

¶24 These guidelines, issued approximately two years after the Supreme Court's decision in Santa Fe Independent School District, reflect the balancing between the Establishment Clause's concept of neutrality and the Free Speech Clause's limited public forum. Thus, while a school district or an association may consider drafting a neutral disclaimer regarding student speech, it cannot censor student speech from a religious viewpoint where the school district or the association has created a limited public forum.

III.

The Recently Revised OSSAA Policy is Constitutionally Overbroad, Potentially Violating a Student-Speaker's Free Speech Rights.

¶25 Applying this balancing to the recently revised OSSAA policy, that policy is overbroad for three reasons. First, while the policy fails to indicate whether a limited public forum is created, the policy specifically bans prayer. Therefore, if opening remarks are offered, the OSSAA policy certainly places a religious viewpoint restriction on speech. The policy specifically states that no one may publicly recite a prayer or invite others to do so audibly or in silence. Moreover, this restriction applies even if prayer is offered voluntarily by a student, parent, or other adult. Such a sweeping restriction is inconsistent with the fact-intensive balancing described by the cases above.

¶26 Second, the policy extends to regional, area, district, or other playoff events that could lead to OSSAA events. Consequently, the policy requires other entities to also place restrictions on speech that implicates a student-speaker's Free Speech rights.

¶27 Third, even if a limited public forum is not created, the OSSAA policy on its face prohibits corporate prayer at any such events, even if offered voluntary and even if done in silence. Such an extreme prohibition runs afoul of the Free Speech rights of those who would choose to voluntarily pray before events. For example, a crowd at a high school football game recently recited the Lord's Prayer during a "moment of silence" after the high school changed its policy regarding prayer.[7] A policy attempting to preemptively ban such speech clearly runs afoul of the Free Speech Clause. See Chandler v. Siegelman, 230 F.3d 1313, 1316 (11th Cir. 2000) (indicating that an injunction limiting any prayer in a public context at any school function would be too broad).

¶28 It is, therefore, the official Opinion of the Attorney General that:

1. The U.S. Supreme Court has held that a public school district or a publicly funded association may (1) permit a student-speaker chosen through neutral criteria unrelated to the content of the student-speaker's speech (2) to deliver opening remarks (3) the content of which are chosen by the student-speaker without official government involvement. Compare Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist., 508 U.S. 384 (1993) with Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290 (2000). 

2. And when a student-speaker delivers remarks within that context, the school district or association cannot ban or prohibit those remarks simply because they exhibit a religious viewpoint. See Rosenburger v. Rector & Visitors of Univ. of Va., 515 U.S. 819 (1995).[8] 

3. The recently revised Oklahoma Secondary School Activities Association policy is constitutionally overbroad on its face.[9] 

 

E. SCOTT PRUITT
Attorney General of Oklahoma

CARA N. RODRIGUEZ
General Counsel to the Attorney General 

FOOTNOTES

[1] OSSAA coordinates, leads, supervises, and regulates secondary school activities for member schools, many of which are public schools. This opinion does not examine whether OSSAA is publicly funded. Nevertheless, the analysis applies to any entity, whether publicly funded or not, that acts on behalf of and stands in the shoes of public schools when coordinating, leading, supervising, and regulating secondary school activities.

[2] Board of Directors' Policy, XIX. Prayer at OSSAA Events, available at, http://www.ossaaonline.com/docs/2015-16/MiscForms/MF_2015-16_BoardPolicies.pdf?id=5 (last visited Sep. 24, 2015).

[3] While the Supreme Court has not clearly specified what constitutes neutral criteria in the context presented here, there is strong suggestion that a selection process not based on the content of speech would pass constitutional muster--for example, through selecting a student from a pool of those who entered on a first-come-first-served basis or who made honor roll in a given period. See Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 843 (1995) ("[A] public university may maintain its own computer facility and give student groups access to that facility, including the use of the printers, on a religion neutral, say first-come-first-served, basis. If a religious student organization obtained access on that religion-neutral basis and used a computer to compose or a printer or copy machine to print speech with a religious content or viewpoint, the State's action in providing the group with access would no more violate the Establishment Clause than would giving those groups access to an assembly hall.").

[4] See Doe ex rel. Doe v. Sch. Dist. of City of Norfolk, 340 F.3d 605, 613 (8th Cir. 2003); Adler v. Duval Cnty. Sch. Bd., 206 F.3d 1070, 1080 (11th Cir. 2000) (en banc), reinstated, Adler v. Duval Cnty. Sch. Bd., 250 F.3d 1330, 1342 (11th Cir. 2001); Chandler v. Siegelman, 230 F.3d 1313, 1316-17 (11th Cir. 2000); Am. Humanist Ass'n v. S.C. Dep't of Educ., Civil Action No. 6:13-2471-BHH, 2015 WL 2365350, * 10 (D.S.C. May 18, 2015).

[5] Guidance on Constitutionally Protected Prayer in Public Elementary and Secondary Schools [hereinafter guidelines], U.S. Dep't of Educ. Letter (last modified Sep. 15, 2003), available at http://www2.ed.gov/policy/gen/guid/religionandschools/prayer_guidance.html.

[6] See footnote 5.

[7] Chris Martin, Georgia High School Scolded for Pregame Prayers and Hymns, IJReview, available at http://www.ijreview.com/2015/08/404356-georgia-high-school-scolded-pregame-prayers-hymns-heresfansresponded-friday-night/.

[8] The Oklahoma Supreme Court recently held that the plain intent of Article II, Section 5 of the Oklahoma Constitution "is to ban State Government, its officials, and its subdivisions from using public money or property for the benefit of any religious purpose." Prescott v. Okla. Capitol Pres. Comm'n, 2015 OK 54, ¶ 4, ___P.3d. __. Further, it held that "[t]o reinforce the broad, expansive effect of Article 2, Section 5, the framers specifically banned any uses 'indirectly' benefitting religion." Id. ¶ 5.

Because this opinion addresses student-led, student-initiated, and student-controlled prayer, Article II, Section 5 is not implicated. Specifically, a student-speaker who makes remarks from a religious viewpoint is neither the State nor a state official or subdivision. Further, that such speech is the student's own, the content of which the State has had no hand in shaping, contravenes any state attempt to indirectly benefit religion. Finally, because the student-led speech as described in this opinion is specifically deemed permissible under federal law, interpreting Article II, Section 5 otherwise would produce a chilling effect on speech that is contrary to one of this country's most basic and fundamental rights: the freedom of speech. Therefore, we conclude that Article II, Section 5 does not operate to silence a student-speaker's message as described in this opinion and, in fact, conclude that Article II, Section 5 has no application in this context.

[9] An official Attorney General opinion addressing the constitutionality of policies, as with statutes, is not binding but carries persuasive value. York v. Turpen, 1984 OK 26, ¶ 12, 681 P.2d 763, 767.

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2015 OK 54, 
PRESCOTT v. OKLAHOMA CAPITOL PRESERVATION COMMISSION
Cited

 
1984 OK 26, 681 P.2d 763, 55 OBJ 1013, 
State ex rel. York v. Turpen
Discussed